IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JOSEPHINE HOUSE, by her guardian ad litem, PUBLIC GUARDIAN OF STANISLAUS COUNTY, | ) ) ) ) | No. CV-F-08-1880 OWW/GSA MEMORANDUM DECISION AND ORDER GRANTING IN PART WITH LEAVE TO AMEND AND DENYING IN PART DEFENDANTS CAL STATE MORTGAGE CO., CAL STATE HOME LOANS, AND ALEXANDER GOMEZ'S MOTION TO DISMISS FIRST AMENDED COMPLAINT (Doc. 25) AND DEFENDANT MURPHY SABATINO'S MOTION TO DISMISS FIRST AMENDED COMPLAINT (Doc. 30) |
| Plaintiff, | ) ) ) ) ) | |
| vs. | ) ) ) | |
| CAL STATE MORTGAGE CO., et al., | ) ) ) ) | |
| Defendants. | ) ) ) ) | |

On December 5, 2008, Plaintiff Josephine House, by her guardian ad litem, Public Guardian of Stanislaus County, commenced this action.  Plaintiff is proceeding pursuant to the First Amended Complaint (FAC) filed on February 9, 2009.

A.   FIRST AMENDED COMPLAINT.

The FAC alleges that Plaintiff resided with her sister, Joan House, in a home in Turlock, California that they inherited from

1

their parents.  Plaintiff is handicapped within the meaning of
the Fair Housing Act, 42 U.S.C. § 3602(h); is disabled within the
meaning of California Fair Employment and Housing Act (FEHA),
California Government Code § 12955.3; is a dependent adult within
the meaning of California Welfare & Institutions Code § 15610.23;
that her home is a dwelling under the Fair Housing Act, 42 U.S.C.
§ 3602(B) and a housing accommodation under FEHA, Government Code
§ 12927(d).  Plaintiff is alleged, since 1998, to have been
unable to care for her property or transact business because of
her disability and has had physical or mental limitations that
restrict her ability to carry out normal activities or to protect
her rights.

Defendants include Alexander Gomez, a licensed real estate
broker and president, owner, operator and designated broker of
Defendants Cal State Home Loans and Cal State Mortgage Co., Inc.
The FAC alleges that each of these defendants is a creditor or
lender within the meaning of California Financial Code § 4970(g)
and Home Ownership and Equity Protection Act, 15 U.S.C. § 1639 *et
seq.*, Defendants also are Benjamin Capital, Inc., whose
designated officer-broker was Defendant Murray Sabatino, a real
estate broker licensed by the California Department of Real
Estate.  Defendant Larry Menton is alleged to have been the
owner-operator of Benjamin Capital, Inc. who personally
participated in placing the loans at issue and acted as a broker
on behalf of Benjamin Capital and who received a commission,
along with Cal State, for each loan extended to Plaintiff.

2

1  Plaintiff is informed and believes that Defendant Menton was not

2  licensed as a broker by the Department of Real Estate at the time

3  the loans were made to Plaintiff.[1]

4      The FAC alleges:

5      **A. INTRODUCTION**

6          14. Defendants individually and through their
           agents, have engaged in a continuing pattern
7          or practice of unlawful conduct, including,
           but not limited to:

8
               a. Otherwise making unavailable a
9              dwelling because of disability;

10             b. Imposing discriminatory terms
               and conditions in connection with
11             the provision of home loans because
               of disability;

12
               c. Discriminating in the provision
13             of real estate services because of
               disability;

14
               d. Charging and collecting
15             excessive and unlawful fees and
               commission in connection with the
16             provision of home loans;

17             e. Charging excessive and unlawful
               interest in connection with the
18             provision of home loans;

19             f. Failing or refusing to make
               proper disclosures in connection
20             with the provision of home loans;

21             g. Breaching their fiduciary
               duties; and,

22
               h. Wrongfully depriving a dependent
23

24      [1]Defaults have been entered against Defendants Benjamin
       Capital, Inc., and Larry Menton.  Also named as a Defendant is Joan
25     House because she is a co-owner of the Turlock home and an
       indispensable party.  Plaintiff does not seek monetary damages
26     against Joan House.

3

adult of property.

15. Each of these unlawful practices was committed by each defendant, acting individually or through his or its agents, as part of a scheme to target, defraud, and injure a poor, disabled, dependent person whose dwelling had appreciated by stripping her home of equity.

B. JOSEPHINE HOUSE INHERITS HER PARENTS' HOUSE AND GETS A MORTGAGE LOAN.

16. Josephine House and her sister inherited their parents' home, located at 2025 Zinfandel Lane in Turlock. The Turlock home was and remains Plaintiff's only home. Josephine House is poor because of her disabilities. She receives only $700 per month in supplemental security income.

17. Plaintiff and her sister, after inheriting the home, obtained a $10,000 mortgage loan in order to renovate the kitchen. The plaintiff and her sister were unable to keep up the payments on that loan, and by 2005, they faced foreclosure.

C. BENJAMIN CAPITAL SETS UP AND CAL STATE MAKES PREDATORY LOANS TO THE HOUSE SISTERS.

18. An employee or agent of Benjamin Capital arranged for the House sisters to obtain a mortgage loan from Cal State in June, 2005. Defendants took advantage of the Plaintiff's disability and financial hardship by placing her in a new, larger and more expensive mortgage, even though they knew that Plaintiff lacked the financial resources to repay that loan.

19. The plaintiff and her sister obtained a mortgage loan from Cal State on June 27, 2005. This closed-end loan was misrepresented by the defendants as a home equity line of credit and was predatory. It was a five-year, interest-only loan, with a balloon payment greater than the amount financed. The loan amount financed was $22,306.00, of which $11,182.76 was deducted to pay off the outstanding mortgage and an additional

4

$8,000.00 to pay off unsecured debt. The APR was 20.995%. The finance charge was $25,863.78. The monthly, interest only payments, were $335.43, and ran from August 1, 2005, to July 1, 2010. The balloon payment in the amount of $28,379.41 would come due on July 1, 2010.  Defendants, as part of this transaction, skimmed excessive, unearned and unlawful fees, commissions and charges from the loan proceeds.

20. Less than six months later, defendants gave another even larger and more expensive loan to the plaintiff and her sister. The plaintiff and her sister obtained the current mortgage loan from Cal State on December 7, 2005. This closed-end loan was misrepresented as a home equity line of credit and is predatory. It is a five-year, interest-only loan, with a balloon payment greater than the amount financed. The loan amount financed is $40,353.52, of which $28,742.75 was deducted to pay off the first Cal State mortgage loan. The APR is 18.941%. The finance charge is $41,619.85. The monthly, interest-only payments are $549.19, and run from February 1, 2006, to January 1, 2011. The balloon payment in the amount of $49,571.16. comes due on January 1, 2011. Defendants, as part of this transaction, failed to provide the plaintiff with proper notice of her right to cancel the loan and skimmed unearned, excessive and unlawful fees, commissions and charges from the loan proceeds.

21. Each of these mortgage loans was predatory, arranged by Benjamin Capital, Inc., Larry Menton and/or Murphy Sabatino and their agents, and extended by Cal State to the plaintiff and her sister as part of defendants' scheme to collect excessive and unlawful fees, commissions and charges, excessive and unlawful interest, and was calculated to strip equity from the Turlock home.

22. Defendants knew or should have known that Josephine House was disabled, dependent, restricted in her ability to carry out normal activities or protect her rights, and Defendants knew or should have known that the

plaintiff and her sister could not afford to repay either of the Cal State loans and that their conduct was likely to harm the plaintiff. Defendants and/or their agents made material misrepresentations to the plaintiff, on and before July 1, 2005 and December 15, 2005, the dates that each of these loans closed, claiming that each of these loans was in her best interest and that the fees, commission, charges and interest assessed were lawful. Josephine House reasonably relied upon defendants' and their agents' misrepresentations, and has suffered injury as a result.

**D. THE COUNTY APPOINTS CONSERVATORS FOR THE HOUSE SISTERS.**

23. The Superior Court for Stanislaus County appointed the County's Public Guardian as conservator for Josephine House, and a private conservator for Joan House, in January 2008.

**E. HOUSE RESCINDS THE CAL STATE LOAN.**

24. Josephine House rescinded the Cal State loans on November 21, 2008.

**F. DEFENDANTS INJURED PLAINTIFF.**

25. The plaintiff, because of defendants' unlawful acts or practices, has suffered from emotional distress, and attendant bodily injury, has suffered violation of her rights, loss of dignity, embarrassment and otherwise has sustained injury and harm. Plaintiff has also suffered economic losses due to defendants' predatory lending. Plaintiff accordingly is entitled to compensatory damages.

26. Defendants, in doing the acts of which plaintiff complains, acted with knowledge, intent, oppression, fraud and malice, and with wanton and conscious or reckless disregard of the federally and state protected rights of plaintiff.  Plaintiff, accordingly, is entitled to punitive damages.

27. There now exists an actual controversy

6

between the parties regarding defendants'
duties under the federal and state lending
and fair housing laws. Plaintiff,
accordingly, is entitled to declaratory
relief.

28. Defendants, unless enjoined, will
continue to engage in the unlawful acts and
the pattern or practice of discrimination
described above. Plaintiff has no adequate
remedy at law. Plaintiff is now suffering and
will continue to suffer irreparable injury
from defendants' acts and their pattern or
practice of unlawful conduct and
discrimination against persons with
disabilities unless relief is provided by
this Court. Plaintiff, accordingly, is
entitled to injunctive relief.

The FAC alleges ten claims for relief:

First Claim for Relief - discriminatory
housing practices in violation of the Fair
Housing Act, 42 U.S.C. § 3601 (FHA);

Second Claim for Relief - unlawful practices
in violation of the Home Ownership and Equity
Protection Act of 1994, 15 U.S.C. § 1639 *et
seq.* (HOEPA);

Third Claim for Relief - unlawful practices
in violation of Real Estate Settlement
Procedures Act, 12 U.S.C. § 2601 *et seq.*
(RESPA);

Fourth Claim for Relief - unlawful practices
in violation of the Truth in Lending Act, 15
U.S.C. § 1601 *et seq.* (TILA);

Fifth Claim for Relief - unlawful practices
in violation of California Covered Loans Act,
California Financial Code § 4970 *et. seq.*
(CCLA);

Sixth Claim for Relief - discriminatory
housing practices in violation of FEHA,
California Government Code § 12955 *et seq.*
(FEHA);

Seventh Claim for Relief - Fraud;

7

Eighth Claim for Relief - breach of fiduciary
duty in violation of California Business and
Professions Code § 10176;

Ninth Claim for Relief - dependent person
abuse in violation of California Welfare and
Institutions Code §§ 15610 *et seq.* and 15657;

Tenth Claim for Relief - pattern or practice
of unlawful conduct in violation of
California Business and Professions Code §
17200.

The FAC prays for compensatory, statutory and punitive damages

according to proof.  The FAC also prays for a judgment that:

2.  Declares that defendants have violated
the provisions of the applicable federal and
state laws;

3.  Enjoins all unlawful practices complained
about and imposes affirmative injunctive
relief requiring defendants, their partners,
agents, employees, assignees, and all persons
acting in concert or participating with them,
to take affirmative action to address the
effect of their unlawful and discriminatory
conduct;

4.  Awards up to three times the amount of
actual damages to plaintiff against each
defendant pursuant to Civil Code § 3345.

The FAC also prays for attorneys' fees and costs and "all such

other relief as the Court deems just."

     Defendants Gomez, Cal State Home Loans and Cal State

Mortgage Co., Inc., move to dismiss the FAC for failure to state

a claim upon which relief can be granted as barred by the

applicable statutes of limitation; that mortgage lenders do not

owe borrowers a fiduciary duty; and for failure to satisfy the

pleading requirements for fraud set forth in Rule 9(b), Federal

Rules of Civil Procedure.   Defendant Sabatino moves to dismiss

the FAC as barred by the applicable statutes of limitation; for
failure to satisfy Rule 9(b); that the Fifth Claim for Relief
fails to allege facts sufficient to establish that the loan is a
"covered loan" under California Financial Code § 4970; that
Plaintiff failed to seek administrative relief pursuant to FEHA
as to the Sixth Claim for Relief and failed to establish that her
FEHA claim is based upon the requisite housing accommodations
governed by the California Government Code; and that the Eighth
Claim for breach of fiduciary duty under California Business and
Professions Code does not provide a private right of action.  The
Cal State Defendants join Sabatino's motion to dismiss.

     B.   GOVERNING STANDARDS.

          1.   Motion to Dismiss - Rule 12(b)(6).

     A motion to dismiss under Rule 12(b)(6) tests the
sufficiency of the complaint.  *Novarro v. Black*, 250 F.3d 729,
732 (9th Cir.2001). Dismissal of a claim under Rule 12(b)(6) is
appropriate only where "it appears beyond doubt that the
plaintiff can prove no set of facts in support of his claim which
would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-
46 (1957).  Dismissal is warranted under Rule 12(b)(6) where the
complaint lacks a cognizable legal theory or where the complaint
presents a cognizable legal theory yet fails to plead essential
facts under that theory.  *Robertson v. Dean Witter Reynolds,
Inc.*, 749 F.2d 530, 534 (9th Cir.1984).  In reviewing a motion to
dismiss under Rule 12(b)(6), the court must assume the truth of
all factual allegations and must construe all inferences from

them in the light most favorable to the nonmoving party.
*Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir.2002).  However,
legal conclusions need not be taken as true merely because they
are cast in the form of factual allegations.  *Ileto v. Glock,
Inc.*, 349 F.3d 1191, 1200 (9th Cir.2003).  "A district court
should grant a motion to dismiss if plaintiffs have not pled
'enough facts to state a claim to relief that is plausible on its
face.'" *Williams ex rel. Tabiu v. Gerber Products Co.*, 523 F.3d
934, 938 (9th Cir.2008), quoting *Bell Atlantic Corp. v. Twombley*,
550 U.S. 544, 570 (2007).  "'Factual allegations must be enough
to raise a right to relief above the speculative level.'" *Id.*
"While a complaint attacked by a Rule 12(b)(6) motion to dismiss
does not need detailed factual allegations, a plaintiff's
obligation to provide the 'grounds' of his 'entitlement to
relief' requires more than labels and conclusions, and a
formulaic recitation of the elements of a cause of action will
not do." *Bell Atlantic*, *id.* at 555.  A claim has facial
plausibility when the plaintiff pleads factual content that
allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged.  *Id.* at 556.  The
plausibility standard is not akin to a "probability requirement,'
but it asks for more than a sheer possibility that a defendant
has acted unlawfully,  *Id.*  Where a complaint pleads facts that
are "merely consistent with" a defendant's liability, it "stops
short of the line between possibility and plausibility of
'entitlement to relief.'" *Id.* at 557.  In *Ashcroft v. Iqbal*, ___

U.S. ___, 129 S.Ct. 1937 (2009), the Supreme Court explained:

> Two working principles underlie our decision in *Twombley*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitations fo the elements of a cause of action, supported by mere conclusory statements, do not suffice ... Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss ... Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense ... But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.' ....
>
> In keeping with these principles, a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Immunities and other affirmative defenses may be upheld on a motion to dismiss only when they are established on the face of the complaint. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir.1999); *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980) When ruling on a motion to dismiss, the court may consider the facts alleged in the complaint, documents attached

11

to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the court takes judicial notice.  *Parrino v. FHP, Inc*, 146 F.3d 699, 705-706 (9th Cir.1988).

       2.  <u>Rule 9(b)</u>.

Rule 9(b) requires that, in all averments of fraud, the circumstances constituting fraud be stated with particularity. One of the purposes behind Rule 9(b)'s heightened pleading requirement is to put defendants on notice of the specific fraudulent conduct in order to enable them to adequately defend against such allegations.  *See In re Stac Elec. Litig.*, 89 F.3d 1399, 1405 (9th Cir.1996).  Furthermore, Rule 9(b) serves "to deter the filing of complaints as a pretext for the discovery of unknown wrongs, to protect [defendants] from the harm that comes from being subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis."  *Id.*

Rule 9(b) requires that allegations of fraud be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged to that they can defend against the charge and not just deny that they have done anything wrong.  *Celado Int'l., Ltd. v. Walt Disney Co.*, 347 F.Supp.2d 846, 855 (C.D.Cal.2004); *see also Neubronner v. Milkin*, 6 F.3d 666, 671 (9th Cir.1993).  As a general rule, fraud allegations must state "the time, place and specific content of

1   the false representations as well as the identities of the

2   parties to the misrepresentation." *Schreiber Distrib. v. Serv-*

3   *Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.1986).   As

4   explained in *Neubronner v. Milken*, *supra*, 6 F.3d at 672:

5               This court has held that the general rule
                that allegations of fraud based on
6               information and belief do not satisfy Rule
                9(b) may be relaxed with respect to matters
7               within the opposing partys' knowledge.   In
                such situations, plaintiffs cannot be
8               expected to have personal knowledge of the
                relevant facts ... However, this exception
9               does not nullify Rule 9(b); a plaintiff who
                makes allegations on information and belief
10              must state the factual basis for the belief.

11      C.   **STATUTES OF LIMITATIONS**.

12      Initially, Defendants moved to dismiss the HOEPA, RESPA,

13  TILA, and FEHA claims (Second, Third, Fourth, and Sixth Claims

14  for Relief) on the ground that they were barred by the one-year

15  statutes of limitations applicable to those claims, the FHA

16  (First Claim for Relief) as barred by the two-year statute of

17  limitations, and the CCLA and fraud claims (Fifth and Seventh

18  Claims for Relief) as barred by the three-year statute of

19  limitations applicable to those claims.   Noting that the FAC

20  alleges that Plaintiff obtained the First Loan on June 27, 2005

21  and the Second Loan on December 7, 2005 and contending that

22  Plaintiff did not file this action until December 8, 2008,

23  Defendants argued that all of these claims for relief are time-

24  barred.

25      The docket initially showed that this action was commenced

26  on December 8, 2008.   However, on May 7, 2009, after the motions

to dismiss had been filed, a Clerk's Notice of Docket Correction was filed:

> The Date Filed date for 1 Complaint and 2 Motion to Appoint Guardian Ad Litem has been changed to reflect the actual date filed date, 12/5/2008.  Initial filing fee in this matter tendered on 12/5/2008.

To the extent Defendants' motions to dismiss were based on the December 8, 2008 filing date for the Complaint, the motions to dismiss are DENIED.

Plaintiff argues that those claims for relief subject to a three-year statute of limitations with respect to the December 2005 Loan are not time-barred because of the allegation in Paragraph 22 of the FAC the December 2005 Loan closed on December 15, 2005.

Plaintiff acknowledges that the statute of limitations for damages under HOEPA and TILA (Second and Fourth Claims for Relief) is one-year.  She asserts that the statute of limitations for rescission under HOEPA and TILA is three years, 15 U.S.C. § 1635(f), and contends that Defendants' motions to dismiss fail to acknowledge the rescission remedy available to Plaintiff.

Defendants reply that the FAC does not seek rescission of the loans and refer to the only allegation in the FAC mentioning rescission, i.e., Paragraph 24, where Plaintiff avers that she "rescinded the Cal State loans on November 21, 2008."

The FAC does not seek rescission under HOEPA or TILA.  There is no claim for rescission in the FAC nor does the prayer for relief seek rescission.  If Plaintiff intends to seek rescission

1    under HOEPA or TILA, Plaintiff must amend to so allege.

2         Plaintiff argues that FHA, HOEPA, RESPA and TILA claims

3    (First, Second, Third, and Fourth Claims for Relief) are subject

4    to equitable tolling.  *See King v. State of California*, 784 F.2d

5    910, 915 (9th Cir.1986), *cert. denied*, 484 U.S. 802

6    (1987)(equitable tolling available in a TILA action); *Brewer v.*

7    *IndyMac Bank*, 609 F.Supp.2d 1104, 1118 (E.D.Cal.2009)(equitable

8    tolling available in a RESPA action); *Matthews v. New Century*

9    *Mortg. Corp.*, 185 F.Supp.2d 874, 883 (S.D.Ohio 2002)(applying

10   equitable tolling to a FHA claim); *In re Community Bank of*

11   *Northern Virginia*, 418 F.3d 277, 305 (3rd Cir.2005)(equitable

12   tolling available to HOEPA claim).  Plaintiff, noting that

13   equitable tolling has been applied where mental incompetence is

14   shown, *see Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir.1999),[2]

15   refers to the allegations in Paragraph 4 of the FAC:

16              Josephine House, since at least 1998, has
               been unable to care for her property or
17             transact business because of her disability.
               Josephine House, at all times relevant to
18             this action, has had physical or mental
               limitations that restrict her ability to
19             carry out normal activities or to protect her
               rights.
20
21   Plaintiff also refers to the allegation in Paragraph 23 that the

22   Public Guardian was appointed as conservator for Plaintiff in

23        _____

24        [2]Plaintiff also cites *Brockamp v. United States*, 67 F.3d 260,
     263 (9th Cir.1995), *rev'd on other grounds*, 519 U.S. 347 (1997) as
25   authority that mental incompetence constitutes a ground of
     equitable tolling.  However, the Supreme Court reversed the Ninth
26   Circuit, holding that the statutory limitations period on tax
     refund claims does not authorize equitable tolling and was not
     equitably tolled by a taxpayers' mental disabilities.

1  January 2008.  These allegations, Plaintiff contends,

2  sufficiently plead equitable tolling of the applicable statutes

3  of limitations  for the FHA, HOEPA, RESPA and TILA claims.

4      Defendants reply that these allegations do not sufficiently

5  allege equitable tolling based on mental incapacity.  Defendants

6  cite *Robles v. Leppke*, 2007 WL 2462058 (E.D.Cal.2007), where

7  Judge Ishii, in adopting a recommendation of dismissal for

8  failure to state a claim, stated:

9          Equitable tolling may be applied when
           extraordinary circumstances beyond a
10         plaintiff's control made it impossible to
           file a claim on time.  *Stoll v. Runyon*, 165
11         F.3d 1238, 1242 (9th Cir.1999).  Mental
           incapacity and the effect it has upon the
12         ability to file a lawsuit is an
           'extraordinary circumstance' beyond a
13         plaintiff's control.  *Id.*  The objections'
           allegations alone are insufficient to
14         establish a valid claim for equitable tolling
           because they are vague and unsupported by any
15         medical diagnosis or other evidence showing
           Plaintiff's mental or medical state during
16         the limitation period.  *See Grant v.*
           *McDonnell Douglas Corp.*, 163 F.3d 1136, 1138
17         (9th Cir.1998)(holding letter from
           psychologist inadequate basis for equitable
18         tolling); *Stoll v. Runyon*, 165 F.3d 1238,
           1242 (9th Cir.1999)(stating that equitable
19         tolling is proper where 'overwhelming
           evidence' demonstrates that complainant was
20         completely disabled during the limitations
           period.

21

22  Both *Grant* and *Stoll,* relied upon by Judge Ishii, involved

23  review of summary judgments, not the adequacy of pleading.

24      Defendants also cite *Miller v. Rosenker*, 578 F.Supp.2d 67

25  (D.D.C.2008), which did involve a motion to dismiss.  However, in

26  that case, the plaintiff alleged that he suffered from severe

16

panic disorder and depression, which the District Court concluded is not evidence of the type of "total incapacity" necessary to warrant equitable tolling, *id.* at 72, and did not allege that he had been adjudged incompetent or had a guardian appointed for him. *Id.*

The Court finds that the FAC does not allege specific facts from which it may be inferred that Plaintiff is entitled to equitable tolling of the statutes of limitation based on mental disability. No specific facts are alleged concerning the nature of Plaintiff's mental disability or her status as a dependent adult. The appointment of a conservator in January 2008, outside the scope of the limitations period, fails to demonstrate that Plaintiff is entitled to equitable tolling based on mental incapacity at the time the loans were obtained.

Regardless of equitable tolling, Plaintiff further argues that the HOEPA and TILA "rescission" claims (Second and Fourth Claims for Relief) are not barred by the statute of limitations because the loans were not consummated until January 2008, when Plaintiff was appointed a conservator. Plaintiff refers to 15 U.S.C. § 1635(f): "An obligor's right of rescission shall expire three years after the date of consummation of the transaction ...." Regulation Z, 12 C.F.R. § 226.2(a)(13), defines "consummation" as "the time that a consumer becomes contractually obligated on a credit transaction." As explained in *Jackson v. Grant*, 890 F.2d 118, 120 (9th Cir.1989):

> When a consumer 'becomes contractually

obligated' is, in turn, determined by looking
to state law:

> 1. *State law governs*.  When a
> contractual obligation on the
> consumer's part is created is a
> matter to be determined under
> applicable law; Regulation Z does
> not make this determination.  A
> contractual commitment agreement,
> for example, that under applicable
> law binds the consumer to the
> credit terms would be consummation.
> Consummation, however, does not
> occur merely because the consumer
> has made some financial investment
> in the transaction ... unless, of
> course, applicable law holds
> otherwise.

12 C.F.R. Pt. 225, Supp.1 (Official Staff
Interpretations), Commentary 2(a)(13).

California Civil Code § 1550 sets forth the elements of a

contract:

It is essential to the existence of a
contract that there should be:

1.  Parties capable of contracting;

2.  Their consent;

3.  A lawful object; and

4.  A sufficient cause or consideration.

California Civil Code § 1556 provides that "[a]ll persons are

capable of contracting, except ... persons of unsound mind ...."

Plaintiff cites California Civil Code § 39:

(a) A ... contract of a person of unsound
mind, but not entirely without understanding,
made before the incapacity of the person has
been judicially determined, is subject to
rescission, as provided in Chapter 2
(commencing with Section 1688) of Title 5 of
Part 2 of Division 3.

18

1
2
3
4
5

> (b) A rebuttable presumption affecting the
> burden of proof that a person is of unsound
> mind shall exist for purposes of this section
> if the person is substantially unable to
> manage his or her own financial resources or
> resist fraud or undue influence.  Substantial
> inability may not be proved solely by
> isolated incidents of negligence or
> improvidence.

6   Plaintiff also cites California Civil Code § 1689(b)(7):

7
8

> A party to a contract may rescind the
> contract in the following cases:

9

> ...

10

> (7) Under the circumstances
> provided for in Section[] 39 ....

11       Relying on Paragraph 4 of the FAC, Plaintiff contends that

12  she has alleged sufficient facts to raise the presumption that

13  she lacked capacity to consummate the loans at the times they

14  were obtained for the purpose of her HOEPA and TILA claims.

15  Plaintiff argues that the "earliest date on which both loans were

16  consummated for these purposes was January 2008" and that

17  Defendants "cannot establish any statute of limitation bar to

18  Plaintiff's TILA and HOEPA claims."

19       Again, Defendants point out that the FAC does not allege any

20  claims for rescission.  *See discussion supra*.  Defendants further

21  argue that the FAC fails to allege facts that she was of "unsound

22  mind."  Defendants contend:

23
24
25
26

> There is only the claim that she had
> 'physical or mental limitations that restrict
> her ability to carry out normal activities to
> protect her rights.' ... This broad statement
> lacks any reference to Ms. House's ability to
> manage her finances, or her ability to resist
> fraud or undue influence.  As such, the Court

1      must speculate that Ms. House is entitled to
       the rebuttable presumption, and speculation
2      is not permissible.

3      The FAC does not allege specific facts from which it may be

4  inferred that Plaintiff was incapable of entering into the loan

5  contracts in July and December 2005.  No facts describing

6  Plaintiff's mental disability are alleged; the allegations that

7  Plaintiff was mentally disabled and is a dependent adult are

8  conclusory.

9      Plaintiff argues that Defendants' refusal to rescind

10  Plaintiff's loans constitutes an independent TILA violation.

11  Plaintiff refers to the allegation in Paragraph 24 of the FAC

12  that she rescinded the Cal State loans on November 21, 2008.

13  [Presumably, the TAC means that the Public Guardian rescinded the

14  loans].  Plaintiff cites *Miguel v. Country Funding Corp.*, 309

15  F.3d 1161, 1165 (9th Cir.2002) as holding that "[w]hen a creditor

16  refuses to cancel a loan after receiving timely notice of

17  rescission, the creditor violates TILA."  *See also Brewer v.*

18  *IndyMac Bank*, *supra*, 609 F.Supp.2d at 1114:

19           Where a creditor refuses to cancel a loan
             after receiving timely notice of rescission,
20           the creditor violates TILA ... Pursuant to 15
             U.S.C. § 1640(e), the obligor has one year
21           from the date of refusal to file suit for
             damages arising out of the failure to
22           rescind.

23  Plaintiff contends that "[i]t can be inferred from the complaint

24  that the Defendants failed to cancel the loans after Ms. House

25  rescinded them, therefore, the complaint alleges an independent

26  claim under 15 U.S.C. subdivision 1640(e)."

1    However, as Defendants reply, no where does the FAC allege

2  that Defendants refused to cancel the loans after Plaintiff

3  timely and properly rescinded them.   If Plaintiff intends to

4  proceed with this claim, she must allege it.

5    Plaintiff argues that the statutes of limitations applicable

6  the supplemental state law claims are tolled pursuant to

7  California Code of Civil Procedure § 352(a).

8    Section 352(a) provides:

9         If a person entitled to bring an action ...
          is, at the time the cause of action accrued
10        ... insane, the time of the disability is not
          part of the time limited for the commencement
11        of the action.

12 Insanity, for purposes of Section 352, is defined as "'a

13 condition of mental derangement which renders the sufferer

14 incapable of caring for [her] property or transacting business,

15 or understanding the nature or effects of [her] acts.'" *DeRose v.*

16 *Carswell*, 196 Cal.App.3d 1011, 1027 (1987), quoting *Hsu v. Mt.*

17 *Zion Hospital*, 259 Cal.App.2d 562, 571 (1968).   Plaintiff also

18 refers to California Welfare and Institutions Code § 15610.23(a):

19        'Dependent adult' means any person between
          the ages of 18 and 64 years who resides in
20        this state and who has physical or mental
          limitations that restrict his or her ability
21        to carry out normal activities or to protect
          his or her rights, including, but not limited
22        to, persons who have physical or mental
          abilities that have diminished because of
23        age.

24    Defendants reply that the allegations in Paragraph 4 are the

25 "quintessential example of legal conclusions 'cast in the form of

26 factual allegations.'"

21

1   Defendants are correct that no facts are alleged from which

2   it may be inferred that Plaintiff is "insane" within the meaning

3   of Section 352 or is a "dependent adult" within the meaning of

4   Section 15610.23(a).

5   Plaintiff argues her fraud claim (Seventh Claim for Relief)

6   is timely under the discovery rule.

7   Pursuant to California Code of Civil Procedure § 338(d), a

8   claim for relief on the ground of fraud "is not deemed to have

9   accrued until the discovery, by the aggrieved party, of the facts

10  constituting the fraud."

11  With regard to the December 2005 loan, Plaintiff refers to

12  the allegation in Paragraph 22 that "Defendants and/or their

13  agents made material misrepresentations to the plaintiff, on and

14  before July 1, 2005 and December 15, 2005, the dates that each of

15  these loans closed, claiming that each of these loans was in her

16  best interest and that the fees, commission, charges and interest

17  assessed were lawful."  Plaintiff contends that Defendants'

18  contention that Plaintiff necessarily knew the terms of the

19  December 2005 loan at the time she obtained it and agreed to its

20  terms is unavailing:

21          Defendants cannot assume that Plaintiff must
            have had knowledge of the loan terms when the
22          loans were entered into on 2005 [sic], solely
            because the complaint filed on her behalf by
23          her guardian ad litem ... in 2008, recited
            the loan terms.
24

25  Plaintiff argues that she is entitled to the delayed

    discovery rule with respect to the July 2005 loan.
26

22

As explained in *General Bedding Corp. v. Echevarria*, 947 F.2d 1395, 1397 (9th Cir.1991):

> Discovery, for purposes of § 388(4) [now § 388(d)], is not limited to actual knowledge:
>
>> The rule is that the plaintiff must *plead and prove the facts* showing: (a) Lack of knowledge. (b) Lack of means of obtaining knowledge (in the exercise of reasonable diligence the facts could not have been discovered at an earlier date). (c) How and when he did actually discover the fraud or mistake.  Under this rule constructive and presumed notice or knowledge are the equivalent to knowledge.  So, when the plaintiff has notice or information of circumstances to put a reasonable person on inquiry, or has the opportunity to obtain knowledge from sources open to his investigation (such as public records or corporation books) the statute begins to run.
>
> ... Thus, plaintiff has discovered its claim under § 338(4) [now § 388(d)], and the statute begins to run, when it has actual *or* constructive notice of its claims.

"'A plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence.  The burden is on the plaintiff to show diligence, and conclusory allegations will not withstand demurrer.'" *E-Fab, Inc. v. Accountants, Inc. Services*, 153 Cal.App.4th 1308, 1319 (2007).

The FAC does not comply with these pleading requirements

with regard to the July 2005 loan. Plaintiff cites *Lee Myles Associates Corp. v. Paul Rubke, Enterprises, Inc.,* 557 F.Supp.2d 1134, 1138 (S.D.Cal.2008), wherein the District Court ruled: "The Complaint does not allege when Plaintiff discovered the alleged fraud or when it could have discovered it.  To the extent Defendants contend the fraud claim is untimely, their motion to dismiss is denied."

The District Court is not bound by a decision of another District Court.  The requirements for application of the discovery rule in California are clear; Plaintiff must make the requisite allegations.

Defendants' motion to dismiss the FAC as barred by the statute of limitations is GRANTED WITH LEAVE TO AMEND.

D.   <u>COMPLIANCE WITH RULE 9(b)</u>.

Defendants move for dismissal of the fraud claim (Seventh Claim for Relief) on the ground that the FAC does not comply with the requirements of Rule 9(b).

The Seventh Claim for Relief, after incorporating all preceding allegations, alleges:

> 42.   Defendant Menton engaged in the fraudulent acts and practices alleged above and misrepresented the costs and nature of the loans obtained by Plaintiff from Cal State in July 2005 and December 2005.

> 43.   Plaintiff is informed and believes that defendant Gomez knowingly misrepresented, and/or knowingly permitted, approved, or ratified the misrepresentation of a close-end loan as an open-end loan for both the July 2005 loan and December 2005 loan in order to maximize fees, commissions, interest and

costs otherwise prohibited by law.

44.   Cal State engaged in the fraudulent acts and practices alleged above and knowingly concealed the terms of the loans and the costs associated with the loans obtained in July 2005 and December 2005.  Plaintiff is informed and believes that Cal State knowingly placed her into a loan they knew or should have known she could not afford to repay and knew or should have known that she would face foreclosure.  Defendants in so doing collected excessive and unlawful fees, commissions, interest and costs and stripped equity from Plaintiff's home.

45.   Plaintiff is informed and believes that defendant Murphy Sabatino participated by telephone, on or about November, 2005, in making a loan to the plaintiff and misrepresenting and/or concealing its terms. Plaintiff is further informed and believes that defendant Sabatino aided and abetted defendant Menton in collecting and charging commissions in violation of state law on both of the loans extended by Cal State.

46.   Defendants Menton and Cal State and their agents knew or should have known that Plaintiff was a dependent adult as described above.

47.   Each Defendant injured plaintiff by committing fraud against her, a disabled person, in violation of California Civil Code §§ 1571, 1573, and 1575, among other statutes.

Plaintiff, citing *Moore v. Kayport Package Express., Inc.,* 885 F.2d 531, 540 (9th Cir.1989), and *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir.2007), argues that exceptions to application of Rule 9(b) have been recognized where it is unjust to require the Plaintiff to plead the requisite facts.

In *Moore v. Kayport Package Express,* the Ninth Circuit discussed the particularity requirements in allegations of

1 corporate fraud under Section 10(b) and Rule 10b-5.  The

2 complaint alleged that defendants had fraudulently inflated the

3 market price of securities before plaintiffs bought them.

4 Defendants challenged the allegations because they were based on

5 information and belief, and failed to specify the conduct of each

6 defendant.   The Ninth Circuit ruled:

> In *Wool*, we explained that allegations of
> fraud based on information and belief usually
> do not satisfy the particularity requirements
> under rule 9(b) ... However, the rule may be
> relaxed as to matters within the opposing
> party's knowledge.  For example, in cases of
> corporate fraud, plaintiffs will not have
> personal knowledge of all of the underlying
> facts ... 'In such cases, the particularity
> requirement may be satisfied if the
> allegations are accompanied by a statement of
> the facts on which the belief is founded.'
> ... Instances of corporate fraud may also
> make it difficult to attribute particular
> fraudulent conduct to each defendant as an
> individual.  To overcome such difficulties in
> cases of corporate fraud, the allegations
> should include the misrepresentations
> themselves with particularity and, where
> possible, the roles of the individual
> defendants in the misrepresentations ....
>
> In the present case, the prospectuses are not
> specifically identified as to content, date,
> or author.  The complaint does not specify
> which plaintiff received which prospectus, or
> which plaintiff(s) made purchases through the
> stockbroker defendants, or which securities
> the investors allegedly purchased.  The
> investors' allegations do not adequately
> state the facts on which their belief is
> founded, and thus fail to satisfy even the
> relaxed standard in *Wool* ... Moreover, unlike
> the situation in *Wool*, the accountant, lawyer
> and stockbroker defendants in this case are
> not a narrowly defined group of corporate
> officers or directors who are alleged to have
> had day-to-day control over the fraudulent
> entities or their finances.

26

In *Swartz v. KPMG LLP*, the Ninth Circuit ruled:

> Swartz's original complaint included several allegations detailing the time, place, and content of representations made by KPMG and B & W to Swartz.  No one disputes that Swartz satisfied his pleading burden with respect to those defendants.  Rather, Presidio and DB claim that because the complaint failed to specify any false representations *made by them*, it failed the Rule 9(b) standard. Swartz argues that since DB and Presidio would be liable for the misrepresentations of their co-conspirators, and since he plea a conspiracy, the allegations concerning the KPMG and B & W misrepresentations are sufficient ....

> First, there is no absolute requirement that where several defendants are sued in connection with an alleged fraudulent scheme, the complaint must identify *false statements* made by each and every defendant. 'Participation by each conspirator in every detail in the execution of the conspiracy is unnecessary to establish liability, for each conspirator may be performing different tasks to bring about the desired result.' ... On the other hand, Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'require(s) plaintiffs to differentiate their allegations when suing more than one defendant ... and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.' ... In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, 'identif[y] the role of [each] defendant [] in the alleged fraudulent scheme.' ....

Relying on these cases, Plaintiff argues:

> Defendants' argument that the Plaintiff, a dependent adult, must recall the actual time and place of each statement is indicative of their persistent failure to acknowledge the allegations of Plaintiff's mental disability. It would be unjust to allow the Cal State Defendants to use the same disability that allowed them to take advantage of Ms. House

in the first place to also prevent her from
asserting a claim against them.

As Defendants reply, the cases upon which Plaintiff relies
do not constitute authority excusing Plaintiff from compliance
with the requirements of Rule 9(b).  The requirements were
relaxed in very specific circumstances and did not excuse the
requirements in their entirety.  While the FAC alleges that
Plaintiff is mentally disabled, no details of her disability are
given, other than that they are serious enough to justify the
appointment of a public conservator in January 2008.  If
Plaintiff cannot remember when alleged misrepresentations were
made or who made them, Plaintiff cannot state a claim for relief
for fraud.

Plaintiff nonetheless argues that the FAC satisfies Rule
9(b)'s specificity requirements because the FAC alleges facts
specific enough to give Defendants notice of the particular
misconduct that is alleged to constitute the fraud.  Plaintiff
argues that the failure of the FAC to allege the specific
statements made, when and where the statements were made, and by
whom should be disregarded:

First, it would require the Court to ignore a
critical fact in this case, i.e., that
Plaintiff is a dependent adult with limited
mental capacity ... Second, when multiple
defendants are involved in an alleged
fraudulent scheme there is no absolute
requirement that the Plaintiff must identify
false statements made by each and every
defendant.

The Cal State Defendants reply that the allegations of the

28

1    **FAC do not pass muster:**

2            **Merely explaining that Cal State was the
             lender in both transactions is insufficient,**
3            **where there are no allegations explaining the
             misrepresentations that Cal State purportedly**
4            **made ... Ms. House does allege that Cal State
             'knowingly concealed the terms of the loans**
5            **and the costs associated with the loans
             obtained in July 2005 and December 2005[,]**
6            **but this statement fails to allege how Cal
             State accomplished this alleged concealment.**
7            **What did Cal State tell Ms. House, who said
             it, when did they say it, where did they saw**
8            **it, and how does it follow that the terms
             were 'concealed' when they were disclosed to**
9            **Ms. House in writing?  These are all details
             that are necessary to state a claim for**
10           **fraud, but Ms. House has pled none of this
             information ....**

11

12           **Ms. House's allegations related to Defendant
             Alexander Gomez do not fill this void, for**
13           **numerous reasons.  First, Plaintiff alleges
             that Defendant Gomez misrepresented that the**
14           **loans were open-ended, but she does so on
             information and belief ... [F]raud**
15           **allegations on information and belief are
             only permissible where the information is**
16           **solely within the opposing party's knowledge
             ... If Defendant Gomez in fact made such a**
17           **statement to Plaintiff, then it is not solely
             within Cal State's knowledge.  As such,**
18           **Plaintiff's allegation on information and
             belief does not suffice.  Second, even if the**
19           **statements were appropriately pled as being
             within Plaintiff's knowledge, they are**
20           **lacking the requisite information.  They do
             not specify when, where, or to whom Defendant**
21           **Gomez purportedly made the statements, nor do
             they explain the falsity of the statements**
22           **... Plaintiff's Complaint [sic] asks the
             Court to take it for granted that Cal State**
23           **had contact with Plaintiff and made
             misrepresentations directly to her, but her**
24           **Complaint [sic] contains no facts which
             support this.**

25       **The Cal State Defendants further reply that the FAC does not**

26   **explain each defendants' role in the allegedly fraudulent**

                                29

conduct:

> This omission is critical because, as the
> lender, Cal State normally does not
> communicate directly with the borrower.
> Ordinarily, the borrower communicates only
> with the mortgage broker.  The only
> allegations specific to the Cal State
> Defendants fail to identify when, where, or
> to whom the purported misrepresentations were
> made ... This lack of specificity is most
> likely the result of the fact that Ms. House
> never communicated with Cal State, other than
> through the written loan agreement.
> Additionally, these allegations fail to
> explain how a false misrepresentation
> occurred when the true terms of the loans
> were disclosed to Ms. House in writing ...
> Plaintiff claims that '[i]t is not necessary
> for Plaintiff to allege that the terms of the
> loan documents were altered in order for
> there to be a misrepresentation[,]' but this
> fact is fundamental to Plaintiff's claim
> because it goes to the falsity requirement
> ... How can there have been a false
> representation if Ms. House agreed to the
> terms of the loans and those terms did not
> subsequently change?  This omission renders
> Plaintiff's claim incomplete.

The Cal State Defendants motion to dismiss the Seventh Claim for Relief  for failure to comply with Rule 9(b) is GRANTED WITH LEAVE TO AMEND.

As to Defendant Sabatino, Plaintiff refers to the allegations that Sabatino is a licensed real estate broker and the designated officer-broker of Benjamin Capital and that Benjamin Capital, Larry Menton and/or Sabatino arranged the loans at issue, that Defendants, including Sabatino misrepresented that the loans were in her best interest and that the fees, commissions, charges and interest were lawful, and that Sabatino, on information and belief, participated by telephone in November

2005 in making the loan for Plaintiff and misrepresenting and/or concealing its terms.  Plaintiff argues that these allegations are sufficient to identify the circumstances of Sabatino's fraud because Sabatino filed an Answer to the FAC.

Defendant Sabatino replies that, if the November 2005 telephone call actually occurred, Plaintiff is required to plead the details of the phone call, i.e., what was said, what purported representations were made, and why they were false.  He argues that the filing of the Answer generally denying Plaintiff's allegations does not negate his motion to dismiss based on non-compliance with Rule 9(b).  Sabatino refers to Rule 15(a)(3), Federal Rules of Civil Procedure:

> Unless the court orders otherwise, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 10 days after service of the amended pleading, whichever is later.

Sabatino cites *General Mills, Inc. v. Kraft Foods Global, Inc.*, 495 F.3d 1378, 1380-1381 (Fed.Cir.2007), which states that a defendant facing a deadline to file an answer to the amended pleading may do so without jeopardizing the right to file a motion to dismiss.

Defendant Sabatino's motion to dismiss the Seventh Claim for Relief for failure to comply with Rule 9(b) is GRANTED WITH LEAVE TO AMEND.

Defendants further argue that the specificity requirements of Rule 9(b) should apply to all of the claims for relief alleged

in the FAC.  Defendants cite *Stickrath v. Globalstar, Inc.*, 527 F.Supp.2d 992, 997-998 (N.D.Cal.2007):

> Fraud is not an essential element of either a UCL or CLRA claim, but that does not mean that heightened pleading never applies to such claims.  *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1103 (9th Cir.2003).  To the contrary:
>
>> In cases where fraud is not a necessary element of a claim, a plaintiff may choose nonetheless to allege in the complaint that the defendant has engaged in fraudulent conduct.  In some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim. In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b) ....
>>
>> In other cases, however, a plaintiff may choose not to allege a unified course of fraudulent conduct in support of a claim, but rather to allege some fraudulent and some non-fraudulent conduct. In such cases, only the allegations of fraud are subject to Rule 9(b)'s heightened pleading requirements.
>
> *Id.* at 1103-04.
>
> Plaintiffs thus correctly argue that Rule 9(b) does not necessarily apply to allegations of non-fraudulent conduct. However, they fail to persuade the Court that their allegations are not based on a 'unified course of fraudulent conduct.'  *Id.* at 1103. Plaintiffs allege that Defendants failed to disclose material information about the quality of its service and also made affirmative misrepresentations about that quality.  The alleged omissions and

1    misrepresentations in this case therefore go
2    hand in hand, with all of the allegations
     related to how Defendants advertised its
     service.  Accordingly, this Court concludes
3    that the heightened pleading requirements of
     Rule 9(b) apply to Plaintiffs' claims in
4    their entirety.

5    Plaintiff argues that the FAC does not rely entirely on a

6    course of fraudulent conduct as the basis for her claims and,

7    therefore, she is not required to comply with Rule 9(b) as to any

8    claims for relief other than the Seventh Claim for Relief.

9    Plaintiff cites *Vess v. Ciby-Geigy, supra*, 317 F.3d at 1104,

10   where in cases where a plaintiff does not allege a unified course

11   of fraudulent conduct, the Ninth Circuit cited *Ross v. Bolton* 904

12   F.2d 819, 823 (2nd Cir.1990), that "[t]o require that non-fraud

13   allegations be stated with particularity merely because they

14   appear in a complaint alongside fraud averments ... serves no

15   similar reputational-preserving function, and would impose a

16   burden on plaintiffs not contemplated by the notice pleading

17   requirements of Rule 9(b)."

18   As Defendants reply, the ten claims for relief alleged in

19   the FAC are all premised on the same factual allegations:

20   Plaintiff points to no facts in her
     Opposition which reveal a separate basis for
21   her non-fraud claims; this is because the
     facts alleged by Plaintiff in her Complaint
22   [sic], which are incorporated into every
     single claim, all revolve around the alleged
23   misrepresentations that were made by one or
     all of the defendants ... In other words,
24   Plaintiff uses the same facts to support her
     fraud claim that she uses for all her other
25   claims.  Although Ms. House adds more
     detailed allegations to her fraud claim that
26   do not exist in her general background, the

1              **general facts still all turn on the**
             **Defendants' purported misrepresentations, and**
2              **therefore sound in fraud.**

3      **Defendants' motions to dismiss on this ground are GRANTED**

4 **WITH LEAVE TO AMEND.**

5      **E.**  **FIFTH CLAIM FOR RELIEF - VIOLATION OF CCLA.**

6      **Defendants move to dismiss the Fifth Claim for Relief for**

7 **violation of California Covered Loans Act, California Financial**

8 **Code § 4970 *et seq*. on the ground that the FAC alleges no facts**

9 **establishing that the loan at issue is actually a "covered loan"**

10 **as defined by Section 4970(b):**

11              **'Covered loan' means a consumer loan in which**
             **the original principal balance of the loan**
12              **does not exceed the most current conforming**
             **loan limit for a single-family first mortgage**
13              **loan established by the Federal National**
             **Mortgage Association in the case of a**
14              **mortgage or deed of trust, and where one of**
             **the following conditions are met:**
15
               **(1) For a mortgage or deed of**
16              **trust, the annual percentage rate at**
             **consummation of the transaction will exceed**
17              **by more than eight percentage points the**
             **yield on Treasury securities having**
18              **comparable periods of maturity on the 15th**
             **day of the month immediately preceding the**
19              **month in which the application for the**
             **extension of credit is received by the**
20              **creditor.**

21                **(2) The total points and fees**
             **payable by the consumer at or before closing**
22              **for a mortgage or deed of trust will exceed 6**
             **percent of the total loan amount.**
23
     **Defendants cite *Pottinger v. Accredited Home Lenders, Inc.*,**
24
**2009 WL 616445 (E.D.Cal.2009), which dismissed a claim for**
25
**violation of Section 4970 because Plaintiff alleged no facts**
26

indicating that the loan qualified as "covered" under the section.  Defendants argue that there is no indication in the FAC "what the actual points and fees were, what the conforming loan limits for a single-family residence were at the time of the loans, or what the Treasury yields were at the time of the loans."

Plaintiff asserts that the FAC alleges facts from which it may be inferred that the loans were "covered;"

> Plaintiff's Complaint provides [Defendants] with the dates, annual percentage rate and the amounts financed of each loan (FAC ¶¶ 19, 20).  The allegations in the complaint, read with Subdivision 4790(b) ... establish that the July and December loans meet the statutory definition of covered loans because they have annual percentage rates exceeding eight percentage points of the yield on Treasury Securities at the time relevant to this action and the loans do not exceed the conforming loan limit set by Fannie Mae.

Defendants' motion to dismiss the Fifth Claim for Relief is GRANTED WITH LEAVE TO AMEND.  Plaintiff must allege the specific facts from which it may be inferred that the loans at issue were "covered" loans within the meaning of the statute.

F.   SIXTH CLAIM FOR RELIEF - VIOLATION OF FEHA.

Defendants move to dismiss the Sixth Claim for Relief for discriminatory housing practices in violation of FEHA, California Government Code §§ 12955 *et seq.* on various grounds.

1.   Failure to Exhaust Administrative Remedies.

Defendants, citing *Rojo v. Kliger*, 52 Cal.3d 65, 83 (1990), an employment discrimination case, move to dismiss the Sixth

Claim for Relief on the ground that Plaintiff has not alleged exhaustion of administrative remedies.

However, as Plaintiff notes, Government Code § 12989.1 provides that an "aggrieved person" may commence a civil action for discriminatory housing practice "whether or not a complaint has been filed under this part and without regard to the status of any complaint."

Defendants' motion to dismiss on this ground is DENIED.

> **2.   Government Code § 12955(i).**

Defendants move to dismiss the Sixth Claim for Relief to the extent the FAC purports to state a claim for violation of Section 12955(i), making it unlawful:

> For any person or other organization or
> entity whose business involves real estate-
> related transactions to discriminate against
> any person in making available a transaction,
> or in the terms and conditions of a
> transaction, because of ... disability.

Defendants argue that the FAC contains no allegations that Defendants  discriminated against Plaintiff in the terms and conditions of the Cal State loans based on her claimed protected status: "The Cal State loans were in fact made available to Plaintiff, and Plaintiff has not alleged that the terms were any different because of her disabled status."

Plaintiff argues that Paragraphs 14 and 18-22 allege that Defendants imposed discriminatory terms and conditions with the provision of the loans and discriminated in the provision of real estate services because of her disability.  Plaintiff cites

1   *Matthews v. New Century Mortgage Corp.,* 185 F.Supp.2d 874, 885-

2   887 (S.D.Ohio 2002) and *Hargraves v. Capital City Mortgage Corp.*,

3   140 F.Supp.2d 7, 19-22 (D.D.C.2000), for the proposition that

4   making predatory loans with unfair terms and conditions targeted

5   at protected classes of persons violates the FHA.   Plaintiff

6   cites California Government Code § 12955.6: "Nothing in this part

7   shall be construed to afford to the classes protected under this

8   part, fewer rights or remedies that the federal Fair Housing Act

9   Amendments Act of 1988 ... and its implementing regulations (24

10   C.F.R. 100.1 *et seq. ....*"

11       *Matthews* discussed a claim of "reverse redlining" in

12   violation of the FHA:

13           'Reverse redlining' is the situation in which
             a lender unlawfully discriminates by
14           extending credit to a neighborhood or class
             of people (typically living in the same
15           neighborhood) on terms less favorable than
             would have been extended to people outside
16           the particular class at issue ... In like
             fashion, the Plaintiffs in this case allege
17           that New Century violated the FHA by granting
             them a loan on grossly unfair terms based on
18           their age, sex and marital status, and that
             such terms would not have been extended to
19           credit applicants who were not elderly,
             unmarried women.

20
             ... The elements of a reverse redlining claim
21           brought under the FHA, 42 U.S.C. § 3605, are
             a variation of the elements that typically
22           must be shown for a claim of discrimination
             under § 3605.  A plaintiff invoking § 3605
23           must demonstrate the same factors that she
             would have to demonstrate for a Title VII
24           claim.  *See Babin*, 18 F.3d at 346 (finding
             that the plaintiffs must show: (1) that they
25           were members of a protected class; (2) that
             they attempted to engage in a 'real estate-
26           related transaction' with the defendant and

37

met all relevant qualifications for doing so;
(3) that defendant lender refused to transact
business with the plaintiffs despite their
qualifications; and (4) that the defendant
lender continued to engage in that type of
transaction with other parties with similar
qualifications).

To set forth a cognizable reverse redlining
claim under § 3605, essentially the same
elements must be established, except that the
plaintiff need not show that the lender
refused to transact business, but only that
the lender refused to transact business *on
fair terms*.  Specifically, to establish a
*prima facie* case of discrimination in
violation of § 3605 based on reverse
redlining, the plaintiff must show: (1) that
she is a member of a protected class; (2)
that she applied for and was qualified for
loans; (3) that the loans were given on
grossly unfavorable terms; and (4) that the
lender continues to provide loans to other
applicants with similar qualifications, but
on significantly more favorable terms ... In
the alternative, if the plaintiff presents
direct evidence that the lender intentionally
targeted her for unfair loans on the basis of
sex and marital status, the plaintiff need
not also show that the lender makes loans on
more favorable terms to others.  *See
Hargraves*, 140 F.Supp.2d at 20 (finding that
such a requirement would allow an injustice
to continue so long as it was visited
exclusively on one class of people).

This Court finds that the Plaintiffs have
alleged sufficient facts to survive the
motion to dismiss their claim under § 3605.
First, the Plaintiffs clearly are members of
a protected class.  Second, they applied for
and were qualified for loans.  Third, the
Plaintiffs have alleged that New Century gave
them their loans on grossly unfavorable
terms.  Finally, while the Defendant is
correct that the Plaintiffs have not alleged
that other similarly situated people were
given loans on more favorable terms, the
Plaintiffs have nonetheless presented a
cognizable claim, as they allege and may be
able to show directly that New Century

38

> intentionally targeted them for unfair loans
> on the basis of their sex and marital status,
> thus eliminating the necessity of proving the
> fourth element of the *prima facie* case.

Although the FAC does not allege that Defendants provided loans to other applicants with similar qualifications, but on significantly more favorable terms, the FAC does allege in Paragraph 15 that "[e]ach of these unlawful practices was committed by each defendant ... as part of a scheme to target ... a poor, disabled, dependent person whose dwelling had appreciated by stripping her home of equity." There are no other specific, factual allegations that Defendants *targeted* Plaintiff or others for allegedly grossly unfair loans on the basis of disability, *e.g.,* whether Defendants contacted Plaintiff and others with mental disabilities in order to make these loans.

Defendant Sabatino argues that he was the designated officer for Benjamin Capital, the loan broker:

> [M]ortgage brokers do not set the terms of
> loans.  Thus, to the extent any
> discriminatory terms exist, those would have
> been determined by Cal State, not defendant
> Sabatino.  Defendant Sabatino did not make
> any loan with plaintiff.

Sabatino's argument ignores the conclusory allegations in Paragraphs 10 and 11 that each defendant was the agent of the other and that Defendants conspired to violated federal and state laws.  Because Rule 9 applies to conspiracy claims, heightened specificity is required.

Sabatino replies by referring to Plaintiff's citation to California Government Code § 12927(h)(2), contending that

1    Plaintiff made no reference to the statute applying to

2    refinancing loans.   Section 12927(h)(2) provides:

3              'Real estate-related transactions' include
               any of the following:

4

5                   (1) The making or purchasing of
               loans or providing other financial assistance
               that is for the purpose of purchasing,

6              constructing, improving, repairing, or
               maintaining a dwelling, or that is secured by

7              residential real estate.

8                   (2) The selling, brokering, or
               appraising of residential real property.

9

     Sabatino cites no authority that FEHA does not apply to the

10

     refinancing of residential real estate loans and the statute is

11

12   broad enough to cover such transactions.

          Plaintiff further argues that the FAC states a claim for

13

     violation of Sections 12955(g) and (k):

14

15             It shall be unlawful:

16             ...

17                  (g) For any person to aid, abet, incite,
               compel, or coerce the doing of any of the
               acts or practices declared unlawful in this

18             section, or attempt to do so.

19             ...

20                  (k) To otherwise make unavailable or deny a
               dwelling based on discrimination because of

21             ... disability ....

22        Plaintiff refers to the allegations in Paragraph 15 that

23   each of the unlawful practices alleged in Paragraph 14 "was

24   committed by each defendant, acting individually or through his

25   or its agents, as part of a scheme to target, defraud, and injure

26   a poor, disabled, dependent person whose dwelling had appreciated

                                   40

by stripping her home of equity."

However, as Sabatino replies, the FAC fails to allege specific facts from which it may be inferred that he aided or abetted or conspired with the other defendants to violate FEHA.

With respect to Section 12955(k), Plaintiff, relying on Paragraph 14, argues that the "loans arranged by Defendant Sabatino, in concert with Defendants Benjamin Capital and Menton and extended by the Cal State Defendants, imposed excessive and illegal charges, fees and other terms and conditions that will inevitably deprive Ms. House of her property."

Plaintiff's reliance on Section 12955(k) to state a claim is without merit.  Plaintiff owns her home; she refinanced a prior $10,000 dollar loan because she was facing foreclosure due to her inability to pay that prior loan.  Plaintiff cites no authority and none has been located that her position is a valid construction of Section 12955(k).

Defendants' motion to dismiss the Sixth Claim for Relief is GRANTED WITH LEAVE TO AMEND.

G.   **EIGHTH CLAIM FOR BREACH OF FIDUCIARY DUTY**.

1.   **Cal State Defendants**.

The Cal State Defendants move to dismiss the Eighth Claim for Relief for breach of fiduciary duty in violation of California Business and Professions Code § 10176 on the ground that these defendants did not owe Plaintiff a fiduciary duty as lenders of the loans.  *See Price v. Wells Fargo Bank,* 213 Cal.App.3d 465, 476 (1989):

41

1

>It has long been regarded as 'axiomatic that
>the relationship between a bank and its
>depositor arising out of a general deposit is
>that of a debtor and creditor.' ... 'A debt
>is not a trust and there is not a fiduciary
>relation between a debtor and creditor as
>such.' ... The same principle should apply
>with even greater clarity to the relationship
>between a bank and its loan customers.

Plaintiff does not dispute this law.  However, citing *inter alia*, *Saunders v. Superior Court*, 27 Cal.App.4th 832, 846 (1994), Plaintiff argues that the Cal State Defendants may be liable for the claim of breach of fiduciary duty on the ground of aiding and abetting.

*Saunders*, citing Rest.2d Torts, § 876, held that "[l]iability may also be imposed on one who aids and abets the commission of an intentional tort if the person (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act ...."

Plaintiff refers to the allegations in Paragraph 5 that Defendant Gomez is a licensed real estate broker and contends that, therefore, he is fully aware of the duty a real estate broker owes to his or her client.  Plaintiff also refers to the allegations in Paragraph 12:

>Plaintiff is informed and believes that each
>defendant (except Joan House) knew that the
>other defendants' conduct breached their duty
>to plaintiff and each defendant gave
>substantial assistance or encouragement to
>the other defendants' conduct.

Plaintiff contends that she has pled sufficient facts alleging

42

1   that the Cal State Defendants were aware that Defendants

2   Sabatino, Benjamin Capital and its agent Menton owed a fiduciary

3   duty to the Plaintiff and that their conduct breached the duty

4   owed to Plaintiff.  Plaintiff further refers to the allegations

5   in Paragraphs 19-21 of the FAC:

6           19. The plaintiff and her sister obtained a
           mortgage loan from Cal State on June 27,

7           2005. This closed-end loan was misrepresented
           by the defendants as a home equity line of

8           credit and was predatory. It was a five-year,
           interest-only loan, with a balloon payment

9           greater than the amount financed. The loan
           amount financed was $22,306.00, of which

10          $11,182.76 was deducted to pay off the
           outstanding mortgage and an additional

11          $8,000.00 to pay off unsecured debt. The APR
           was 20.995%. The finance charge was

12          $25,863.78. The monthly, interest only
           payments, were $335.43, and ran from August

13          1, 2005, to July 1, 2010. The balloon payment
           in the amount of $28,379.41 would come due on

14          July 1, 2010.  Defendants, as part of this
           transaction, skimmed excessive, unearned and

15          unlawful fees, commissions and charges from
           the loan proceeds.

16

17          20. Less than six months later, defendants
           gave another even larger and more expensive

18          loan to the plaintiff and her sister. The
           plaintiff and her sister obtained the current

19          mortgage loan from Cal State on December 7,
           2005. This closed-end loan was misrepresented

20          as a home equity line of credit and is
           predatory. It is a five-year, interest-only

21          loan, with a balloon payment greater than the
           amount financed. The loan amount financed is

22          $40,353.52, of which $28,742.75 was deducted
           to pay off the first Cal State mortgage loan.

23          The APR is 18.941%. The finance charge is
           $41,619.85. The monthly, interest-only

24          payments are $549.19, and run from February
           1, 2006, to January 1, 2011. The balloon

25          payment in the amount of $49,571.16. comes
           due on January 1, 2011. Defendants, as part

26          of this transaction, failed to provide the
           plaintiff with proper notice of her right to

1
2

> cancel the loan and skimmed unearned,
> excessive and unlawful fees, commissions and
> charges from the loan proceeds.

3
4
5
6
7
8

> 21. Each of these mortgage loans was
> predatory, arranged by Benjamin Capital,
> Inc., Larry Menton and/or Murphy Sabatino and
> their agents, and extended by Cal State to
> the plaintiff and her sister as part of
> defendants' scheme to collect excessive and
> unlawful fees, commissions and charges,
> excessive and unlawful interest, and was
> calculated to strip equity from the Turlock
> home.

9

Plaintiff argues that the Cal State Defendants provided

10

encouragement to the Broker Defendants in breaching their

11

fiduciary duty by providing excessive commissions for each loan

12

the brokers obtained from the Plaintiff.

13

Defendants reply that the FAC does not satisfy the

14

requirements set forth in *Twombley*:

15
16
17
18
19

> This allegation does not explain how or why
> Cal State was aware of the Broker Defendants'
> fiduciary relationship with Ms. House, nor
> does it provide any specific facts
> substantiating Plaintiff's claim that Cal
> State provided excessive commission [sic] to
> the Broker Defendants.  There are no amounts
> listed to demonstrate whether the actual
> commissions paid were substantial, or enough
> to amount to 'encouragement.'

20

Paragraph 11 of the FAC alleges that Defendants conspired to

21

violate federal and state laws and that "[t]he fiduciary duty

22

owned by any one defendant to plaintiff therefore was owed by

23

each defendant to plaintiff."

24

As Defendants reply, a party, such as Cal State, will not be

25

held liable for conspiracy where the party could not be in

26

violation of the underlying act.  In *Saunders*, the Rest. 2d

44

Torts, provides that liability may be imposed against an aider
and abettor of an intentional tort who "gives substantial
assistance to the other in accomplishing a tortious result and
*the person's own conduct, separately considered, constitutes a*
*breach of duty to the third person*." [Emphasis added].  Although
Plaintiff does not rely on this basis for aider and abettor
liability, there are the allegations in Paragraph 11.  Defendants
cite *Doctor's Co. v. Superior Court*, 49 Cal.3d 39, 47 (1989):

> [T]he *Gruenberg-Wise* rule does not preclude
> the subjection of agents to conspiracy
> liability for conduct which the agents carry
> out 'as individuals for their individual
> advantage' and not solely on behalf of the
> principal ... The limited nature of that rule
> is also consistent with two cases ... In each
> of those cases a plaintiff, defrauded by
> means of one defendant's violation of a
> fiduciary duty, was allowed to recover
> against another defendant who, though not
> subject to the fiduciary's duty, had
> conspired in the fraud.  Since the non-
> fiduciary defendants had acted not simply as
> agents or employees of the fiduciary
> defendants but rather in furtherance of their
> own financial gain, they could not have been
> relieved from liability under the *Gruenberg-*
> *Wise* rule.

Relying on Plaintiff's assertion in her opposition brief that the
Cal State Defendants "provided encouragement to the Broker
Defendants in breaching their fiduciary duty by providing
excessive commissions for each loan," Defendants argue that
Plaintiff's position "forecloses the possibility that Cal State
was acting for their own individual advantage, as this statement
explains that the Broker Defendants are the ones who obtained
excessive commissions, not Cal State."

45

1    The Cal State Defendants' motion to dismiss is GRANTED WITH
2    LEAVE TO AMEND.

3         2.   Defendant Sabatino.

4    Defendant Sabatino moves to dismiss the Eighth Claim for
5    breach of fiduciary duty in violation of California Business and
6    Professions Code § 10176 on the ground that Section 10176 does
7    not provide a private right of action.

8    Business and Professions Code § 10176 provides:

9             The commissioner may, upon his or her own
                 motion, and shall, upon the verified
10               complaint in writing of any person,
                 investigate the actions of any person engaged
11               in the business or acting in the capacity of
                 a real estate licensee within this state, and
12               he or she may temporarily suspend or
                 permanently revoke a real estate license at
13               any time where the licensee, while a real
                 estate licensee, in performing or attempting
14               to perform any of the acts within the scope
                 of this chapter has been guilty of any of the
15               following: [list of prohibited actions or
                 omissions].
16
17   Defendant Sabatino cites, *inter alia, Walters v. Marler*, 83
     Cal.App.3d 1 (1978).  In *Walters*, Walters, the buyer of improved
18
     real estate, retained Leseman, a real estate agent with Lampliter
19
     Realty, whose broker of record was Proulx.  After purchasing the
20
     residence, Walters discovered that only a small portion of the
21
     residence was located on the designated lot.  Walters sued the
22
     seller, the seller's broker and agent, and Lampliter, Leseman and
23
     Proulx.  Based on evidence that Proulx was the president of
24
     Lampliter and its qualifying real estate broker and that Leseman
25
     was a real estate broker employed by Lampliter, Walters contended
26

                                   46

1  that, as the qualifying broker for Lampliter, Proulx was

2  individually liable for his negligence in the performance of his

3  duty to supervise.  *Id.* at 35.  The Court of Appeal rejected the

4  argument:

5              Despite this evidence of negligence on
             Proulx' part, Proulx may not be held
6              individually liable to Walters for injuries
             sustained as a result of Leseman's
7              misrepresentations.  The noncontractual
             rights and liabilities of a real estate
8              broker are governed and determined by the
             general laws of agency ... In the instant
9              case, Leseman was undeniably an agent for
             both Walters and Lampliter; however, he was
10             not an agent for Proulx.  Any action by the
             qualifying broker, Proulx, must be regarded
11             as an action by the corporation and not by
             the broker as an individual.  Thus, as an
12             agent of the corporation, Proulx owed a duty
             to Lampliter to supervise the work of
13             Lampliter employees.  Proulx may therefore be
             liable to Lampliter in an action for
14             indemnification.  However, Proulx owed no
             duty to Walters to supervise Leseman's work;
15             he therefore may not be held personally
             liable to Walters for Leseman's negligent
16             misrepresentation.

17  *Id.*

18       Plaintiff responds that Defendant's argument that California

19  does not recognize a private right of action directly against a

20  corporate officer-broker for alleged violations of Section 11076

21  is "misleading."  Plaintiff cites *Wyatt v. Union Mortgage Co.,* 24

22  Cal.3d 773, 782 (1979):

23             A mortgage loan broker is customarily
             retained by a borrower to act as the
24             *borrower's* agent in negotiating an acceptable
             loan.  All persons engaged in this business
25             in California are required to obtain real
             estate licenses ... Thus, general principles
26             of agency (Civ. Code, §§ 2228 and 2322 ...)

47

> combine with statutory duties created by the
> Real Estate Law (see Bus. & Prof. Code, §
> 10176, subds. (a), (i)) to impose upon
> mortgage loan brokers an obligation to make a
> full and accurate disclosure of the terms of
> a loan to borrowers and to act always in the
> utmost good faith toward their principals.
> 'The law imposes on a real estate agent "the
> same obligation of undivided service and
> loyalty that it imposes on a trustee in favor
> of his beneficiary."'

Plaintiff refers to the allegations in Paragraph 6 that Defendant Sabatino was the designated officer-broker of Defendant Benjamin Capital, Inc. and in Paragraph 21 that the loans were "arranged by Benjamin Capital, Inc., Larry Menton and/or Murphy Sabatino and their agents." Plaintiff refers to allegations in Paragraphs 11-14 that Defendant Sabatino failed to provide full and accurate disclosures of the loan terms and conspired to violate state and federal laws. Plaintiff contends that she has alleged facts sufficient to state a claim for breach of fiduciary duty based on general principles of agency and violation of statutory duties created by the Real Estate Law, that together allow for individual private rights of action. Plaintiff contends that she is not asserting a claim against Defendant Sabatino based solely on his position as the designated officer-broker of Benjamin Capital, Inc. or solely under Section 10176. Plaintiff asserts that Defendant Sabatino is liable because he was the only defendant licensed to act as the broker for the loans and, referring to Paragraph 45, was personally involved in the transactions. Plaintiff reiterates that the Eighth Claim for Relief does not rest solely on a violation of Section 11076 and

1  will amend to reflect this if necessary.

2     Defendant Sabatino's motion to dismiss is GRANTED WITH LEAVE

3  TO AMEND.  The Eighth Claim for Relief allages that "[e]ach

4  Defendant injured plaintiff by breaching his or its fiduciary

5  duty in violation of California Business and Professions Code §

6  10176.

7                          CONCLUSION

8     For the reasons stated:

9     1.  Defendants' motions to dismiss are GRANTED IN PART WITH

10  LEAVE TO AMEND AND DENIED IN PART as set forth above:

11          a.  Defendants' motion to dismiss the FAC as
            barred by the statute of limitations is
12          granted with leave to amend;

13          b.  Defendants' motion to dismiss the FAC for
            noncompliance with Rule 9(b) is granted with
14          leave to amend;

15          c.  Defendants' motion to dismiss the Fifth
            Claim for Relief is granted with leave to
16          amend;

17          d.  Defendants' motion to dismiss the Sixth
            Claim for Relief is granted with leave to
18          amend;

19          e.  Defendants' motion to dismiss the Eighth
            Claim for Relief is granted with leave to
20          amend.

21     2.  Plaintiff shall file a Second Amended Complaint in

22  accordance with the rulings in this Memorandum Opinion and Order

23  within twenty (20) days of its filing date.

24  IT IS SO ORDERED.

25  Dated:   July 9, 2009          _____/s/ Oliver W. Wanger_____
                                   UNITED STATES DISTRICT JUDGE
26

49