1  KATHERINE M. HOGAN (SBN 225597)
   CALIFORNIA RURAL LEGAL ASSISTANCE, INC.
2  801 15th Street, Ste., B
   Modesto, CA 95354
3  Telephone: (209) 577-3811
   Fax: (209) 577-1098
4  khogan@crla.org

5  ILENE J. JACOBS (SBN 126812)
   AUSTA WAKILY (SBN 257424)
6  CALIFORNIA RURAL LEGAL ASSISTANCE, INC.
   511 D Street
7  Marysville, CA 95901
   Telephone: (530) 742-7235
8  Fax: (530) 741-0854
   ijacobs@crla.org
9  awakily@crla.org

10

11 *Other counsel for plaintiff appear
   on the next page*

12 Attorneys for Plaintiff,
   Josephine House, by her guardian
13 ad litem, Public Guardian of
   Stanislaus County

14                 UNITED STATES DISTRICT COURT
15                 EASTERN DISTRICT OF CALIFORNIA

16

17

18 JOSEPHINE HOUSE, by her guardian ad      )   CASE NO. 1:08-CV-01880-OWW-GSA
   litem PUBLIC GUARDIAN OF                  )
19 STANISLAUS COUNTY,                        )
                                             )   **THIRD AMENDED COMPLAINT**
20                                           )
                     Plaintiff,              )
21           vs.                             )
                                             )
22 CAL STATE MORTGAGE CO., INC., a           )
   California corporation; CAL STATE HOME    )
23 LOANS INC., a California corporation;CAL  )
   STATE GROWTH FUND, a California           )
24 corporation; ALEXANDER GOMEZ;             )
   ROXANNA SEWARD; LEONETTE                  )
25 BELLING; BENJAMIN CAPITAL INC., a         )
   California corporation; MURPHY            )
26 SABATINO; MILTON MCLAURIN;                )
   LARRY MENTON;  and JOAN HOUSE, a          )
27 necessary party,                          )

28 _____Defendants.

   *Additional Attorneys for Plaintiff,*

1   *Josephine House by her guardian*
    *ad litem, Public Guardian of*
2   *Stanislaus County*

3

    MAEVE ELISE BROWN (SBN 137512)
4   HOUSING AND ECONOMICS RIGHTS ADVOCATES
    P.O. Box 29435
5   Oakland, CA 94604
    Telephone: (510) 271-8443
6   Fax: (510) 868-4521
    melisebrown@heraca.org
7
    CHRISTOPHER A. BRANCART (SBN 128475)
8   ELIZABETH BRANCART (SBN 122092)
    BRANCART & BRANCART
9   P.O. Box 686
    Telephone: (650) 879-0141
10  Fax: (650) 879-1103
    cbrancart@brancart.com
11  ebrancart@brancart.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**THIRD AMENDED COMPLAINT**                                                    2

1

## I.     INTRODUCTION

2   1.      Plaintiff, a disabled dependent adult, seeks rescission, monetary, declaratory, and

3   injunctive relief against the defendants for predatory lending and discrimination in violation of

4   the Truth in Lending Act, 15 U.S.C. § 1601, *et seq*., Home Ownership and Equity Protection Act,

5   15 U.S.C. § 1639, *et seq*., Fair Housing Act, 42 U.S.C. § 3601, *et seq.*, Real Estate Settlement

6   Procedures Act, 12 U.S.C. § 2601, *et seq.*, and related state laws.

7

## II.     JURISDICTION AND VENUE

9   2.      Jurisdiction is conferred on this Court by 28 U.S.C. § 1331 in that the claims alleged arise

10   under the laws of the United States.  This Court has supplemental jurisdiction pursuant to 28

11   U.S.C. § 1367 to hear and determine Plaintiff's state law claims because those claims are related

12   to Plaintiff's federal law claims and arise out of a common nucleus of related facts.  Plaintiff's

13   state law claims form part of the same case or controversy under Article III of the United States

14   Constitution.

15   3.      Venue is proper under 28 U.S.C. § 1391 in that the claims alleged arose within Stanislaus

16   County, California.

17

## III.     PARTIES

19   4.      Plaintiff Josephine House, at all times relevant to this action, resided with her sister, Joan

20   House, in a home located in Turlock, California that they inherited from their parents. Plaintiff, at

21   all times relevant to this action, is and was disabled and has had mental and physical limitations

22   that restrict her ability to carry out normal activities and to protect her rights. Plaintiff, due to her

23   mental disability, is substantially unable to manage her financial resources, resist fraud and

24   undue influence, or understand the nature or effects of her acts. Plaintiff is represented in this

25   action by her conservator and guardian ad litem, the Public Guardian of Stanislaus County.

26   5.      Defendant Alexander Gomez (Gomez) is a licensed real estate broker and president,

27   owner, operator, and designated broker of Defendant Cal State Home Loans and Defendant Cal

28

**THIRD AMENDED COMPLAINT**                                                                 3

1    State Mortgage Co., Inc. (Cal State Mortgage), Gomez's mortgage servicing and lending

2    companies.[1] Gomez at various times operated his mortgage lending business under either or both

3    of these corporations. Gomez is the president of defendant Cal State Growth Fund and the

4    designated agent for service of process for defendants Cal State Mortgage, Cal State Home

5    Loans, and Cal State Growth Fund. .

6    6.      Defendant Cal State Growth Fund, is a California corporation with its principal place of

7    business in California. Cal State Growth Fund, through private investments by defendant

8    Leonette Belling, funded the loans that were issued by Cal State Mortgage to Plaintiff and her

9    sister in July and December 2005.

10   7.      Defendant Leonette Belling (Belling) funded the July and December loans through a

11   private investment corporation Cal State Growth Fund. Plaintiff is informed and believes and on

12   that basis alleges that Belling was an owner of Cal State Mortgage, Cal State Home Loans, and

13   Cal State Growth Fund when the July and December loans were originated. Plaintiff is further

14   informed and believes and so alleges that Belling is the current owner of Cal State Growth Fund

15   and is an officer and consultant for defendants Cal State Mortgage and Cal State Home Loans.

16   Belling receives financial compensation for her role as a consultant for Cal State Home Loans

17   and Cal State Mortgage.  Belling, at all times relevant to this action, participated in the daily

18   activities of Cal State Mortgage, Cal State Home Loans, and Cal State Growth Fund.  Plaintiff is

19   informed and believes and on that basis alleges that Belling is aware of the pending action as a

20   result of the July and December 2005 loans that she funded. Plaintiff is further informed and

21   believes and so alleges that Belling was not licensed by the DRE at all times relevant to this

22   action.

23   8.      Defendant Roxanna Seward (Seward) is a licensed real estate sales person and a co-owner

24   and vice president of Defendants Cal State Home Loans and Cal State Mortgage. Plaintiff is

25

26

27          [1] The term "Cal State" refers to defendants Alexander Gomez, Roxanna Seward, Leonette
     Belling, Cal State Growth Fund, Cal State Home Loans, and Cal State Mortgage Co., Inc. unless
28   otherwise specified.

**THIRD AMENDED COMPLAINT**                                                                    4

1   informed and believes and so alleges that Seward was the vice president for Cal State Growth

2   Fund when the July and December loans were originated. Seward, was the loan officer for the

3   July and December loans.

4   9.    Defendant Benjamin Capital, Inc. (Benjamin Capital), is or was at all times relevant to

5   this action, a California corporation, licensed by the Department of Real Estate, whose

6   incorporator and designated officer and broker was Defendant Murphy Sabatino (Sabatino).

7   Plaintiff is informed and believes and on that basis alleges that Sabatino, at times relevant to this

8   action, was a co-owner of Benjamin Capital. Plaintiff is further informed and believes and on

9   that basis alleges that Benjamin Capital was created by defendants Sabatino, Milton McLaurin,

10   and/or Larry Menton on or about April 28, 2005 in order to arrange predatory loans. Plaintiff is

11   further informed and believes and on that basis alleges that Benjamin Capital's license has been

12   suspended.

13   10.    Defendant Sabatino is, and was at all times relevant to this action, a real estate broker

14   licensed by the Department of Real Estate. Plaintiff is informed and believes and on that basis

15   alleges that Sabatino was the broker of record for the loans at issue in this action. . Plaintiff is

16   further informed and believes and on that basis alleges that Defendant Sabatino ratified,

17   supervised and authorized the brokering of both transactions and received direct and/or indirect

18   financial compensation from each transaction.

19   11.    Defendant Milton McLaurin (McLaurin), at all times relevant to this action, was a co-

20   owner of Benjamin Capital. Plaintiff is informed and believes and on that basis alleges that

21   McLaurin was a licensed salesperson at all times relevant to this action whose employing broker

22   was defendant Sabatino. Plaintiff is further informed and believes and so alleges that McLaurin is

23   defendant Menton's half brother and participated in extending predatory loans. The Department

24   of Real Estate suspended McLaurin's salesperson license on or about April 10, 2009.

25   12.    Defendant Larry Menton (Menton), at all times relevant to this action worked for

26   Defendants Benjamin Capital, McLaurin, and Sabatino and personally participated in arranging

27   the loans at issue in this action. Defendant Menton was not licensed as a broker by the

28

**THIRD AMENDED COMPLAINT**                                                                 5

1   Department of Real Estate at the time the loans were made to Plaintiff and was acting as an agent

2   on behalf of Defendants Benjamin Capital, McLaurin, and Sabatino. Plaintiff is informed and

3   believes and on that basis alleges that Defendant Menton was acting as a loan originator and/or

4   loan broker under the authority and supervision of Defendants Sabatino and Mclaurin, who were

5   licensed by the Department of Real Estate, Plaintiff is further informed and believes, and on that

6   basis alleges that Menton received compensation from Defendants Benjamin Capital, McLaurin,

7   or Sabatino for each loan obtained for Plaintiff.

8   13.    Defendant Joan House, Plaintiff's sister, is a co-owner of the Turlock home, and in that

9   capacity, is an indispensable party to this action. Joinder of Joan House may be necessary to

10  accord the complete equitable relief in this action because she appears on title for the Turlock

11  home.  Plaintiff is informed and believes and on that basis alleges that Joan House, at all times

12  relevant to this action, is and was a dependent adult with mental limitations that restrict her

13  ability to carry out normal activities and to protect her rights. Plaintiff is further informed and

14  believes and on that basis alleges that Joan House had a private conservator appointed by the

15  superior court of Stanislaus County in or about January 2008. Plaintiff does not seek any

16  monetary relief against Joan House.

17  14.    Each defendant (except Joan House), at all times relevant to this action is, and was, the

18  agent, employee or representative of each other defendant; each defendant, in doing the acts or in

19  failing to act as alleged in this complaint, was acting within the course and scope of his or its

20  actual or apparent authority pursuant to such agency; or the alleged acts or omissions of each

21  defendant as agent were subsequently ratified and adopted by each defendant as principal.[2]

## IV.    FACTS

A.    JOSEPHINE HOUSE INHERITS HER PARENTS' HOME AND RECEIVES A
       MORTGAGE LOAN

---

[2]The term "defendants" refers to all defendants except for Joan House, who is joined only
as a necessary party.

**THIRD AMENDED COMPLAINT**                                                6

15.     Josephine House and her sister, Joan House, were under the care and custody of their parents until their mother died in 1998. The sisters then inherited their parents' home, located at 2025 Zinfandel Lane in Turlock California. Plaintiff's primary source of income is and has been supplemental security disability insurance since least March 2005.

16.     Plaintiff and her sister, after inheriting the home, obtained a $10,000 mortgage loan in order to renovate the kitchen. Plaintiff and her sister, due to their mental illness and inability to transact business and take care of their property, were unable to keep up the payments on that loan, and by 2005, they faced foreclosure.

B.     JOSEPHINE HOUSE'S HISTORY OF MENTAL ILLNESS

17.     Plaintiff has a documented history of a serious and persistent mental illness. She has been a patient with Turlock Behavioral Health and Recovery Services since at least 1998, due to her mental illness, including from May 2005 until the present. Her medical history indicates that since at least 1998, and at all times relevant to this action, she has had dissociative disorder, anxiety disorder, and dependent personality disorder.

18.     Plaintiff's current medical records indicate that she has schizoaffective disorder, mood disorder, and dementia. Plaintiff is informed and believes and on that basis alleges that her current diagnosis dates back to at least March 2005. Plaintiff, furthermore, has suffered from delusional and irrational thoughts, at times relevant to this action.

19.     Plaintiff has been observed by Turlock Regional Services staff, since at least March 2005 and continuing to the present, with emerging evidence of neurological deficits, including but not limited to: expressive language and word finding/substitutions and gross motor skill impairment for novel tasks. Plaintiff is only able to optimally function with highly familiar or routinized tasks, such as assembling boxes.

20.     Plaintiff's mental symptoms include, but are not limited to; mood liability, impaired reasoning, impulsivity, disorganized and atypical thought processes, and hoarding behaviors. Plaintiff, due to her mental illness and limited cognitive abilities is highly vulnerable to the

**THIRD AMENDED COMPLAINT**                                                                 7

1    exploitation of others.

2    21.    Plaintiff, at times relevant to this action, was on a combination of anti-psychotic,

3    antidepressant, and anti-anxiety medications for her mental illness. It is unclear that Plaintiff

4    consistently took her prescribed medication, including when she entered into the July and

5    December loans. Plaintiff has been on medication because of her mental illness since at least

6    1998 and continues to take medications.

7    22.    Plaintiff, in or about May 2005, had over 100 birds, 12 rats, one dog, one chicken, several

8    rabbits, and stacks of animal cages from the floor to the ceiling of her Turlock home. The

9    majority of the animals ultimately were removed by law enforcement.  Shortly after their removal

10   Plaintiff indicated to Adult Protective Services (APS) that she would get all of them back.

11   Plaintiff has been investigated by APS on multiple occasions, because of her mental illness,

12   including but not limited to in May 2005.

13   23.    Plaintiff's mental illness and the manifestations of her mental illness rendered her

14   incapable of entering into the July 2005 and December 2005 loans, transacting business related to

15   the loans, caring for her property, or managing her financial resources. Plaintiff's disability due

16   to her mental illness is an extraordinary circumstance beyond her control that prevented her from

17   understanding the nature of the loan transactions which she entered into with the defendants in

18   July and December or from asserting her rights during the applicable statutes of limitations

19   following the July and December loan transactions.

20   24.    Plaintiff is informed and believes and so alleges that an agent of Benjamin Financial

21   and/or Benjamin Capital, notified the Cal State defendants that the Plaintiff was mentally

22   disabled

23

24   C.    TURLOCK BEHAVIORAL HEALTH AND RECOVERY SERVICES SPEAKS WITH
          LARRY MENTON REGARDING THE FORECLOSURE
25

26   25.    Plaintiff's case manager, Judy Towns, at Turlock Behavioral Health and Recovery

27   Services, in or about May 2005, learned of Plaintiff's financial troubles during Plaintiff's

28

**THIRD AMENDED COMPLAINT**                                                                    8

1    regularly scheduled appointments.

2    26.    Ms. Towns attempted to assist Plaintiff and her sister obtain a more affordable loan. Ms.

3    Towns spoke with Defendant Menton, in or about May 2005, and identified herself as an

4    employee with Turlock Behavioral Health and Recovery. Plaintiff is informed and believes and

5    on that basis alleges that Ms. Towns thought Menton would be able to assist Plaintiff refinance

6    into an affordable loan. Plaintiff is further informed and believes and on that basis alleges that

7    Menton informed Ms. Towns that he would take care of everything and assist the House sisters to

8    refinance the loan.

9    27.    Ms. Towns, at all times relevant to this action, did not participate in the extension and/or

10   negotiation of the terms and conditions of the aforementioned July 2005 loan. Ms. Towns sought

11   merely to provide emotional support for Plaintiff. Plaintiff is informed and believes and on that

12   basis alleges that Defendant Menton did not explain to Ms. Towns the terms and conditions of

13   the loans. Plaintiff is further informed and believes and on that basis alleges Ms. Towns was not

14   aware of the terms and conditions of the loans.

15   28.    Plaintiff is informed and believes and on that basis alleges that Ms. Towns was not aware

16   that the defendants extended a second loan to Plaintiff and her sister in December 2005.

17

18   D.    BENJAMIN CAPITAL SETS UP AND CAL STATE MAKES A PREDATORY LOAN
          TO PLAINTIFF AND HER SISTER

19

20   29.    Plaintiff and her sister obtained a mortgage loan from the Cal State Defendants on June

21   27, 2005 that closed on July 1, 2005 (July loan).

22   30.    Plaintiff's home was appraised for approximately $332,000, in or about June 2005. The

23   Cal State Defendants charged Plaintiff $350 for the appraisal. Plaintiff is informed and believes

24   and on that basis alleges that the appraiser performed a "drive by" appraisal and did not view the

25   interior of the home when determining its value. Plaintiff is further informed and believes and on

26   that basis alleges that the $350 appraisal fee was not reasonable and bona fide and was excessive.

27   31.    The July loan was a five-year loan for $28,500. The annual percentage rate (APR) was

28

**THIRD AMENDED COMPLAINT**                                                                      9

1  20.995%. The monthly payments were $335.43 and ran from August 1, 2005 to July 1, 2010.

2  Plaintiff's final balloon payment of $28,379.41 would come due on July 1, 2010.

3  32.    Plaintiff and her sister received approximately $450 each as part of the July loan

4  transaction. $11,182.76 was deducted to pay off the outstanding $10,000 mortgage, which

5  included an early closure fee. Approximately $8,000 was deducted to pay off unsecured debt.

6  The balance was deducted to pay off various fees, charges and commissions. 33.   The July loan

7  was funded by Defendants Cal State Growth Fund and Belling. Defendant Belling set the interest

8  rate and terms of the loan

9  34.    Plaintiff is informed and believes and on that basis alleges that a reasonable origination

10  fee for a home equity loan provided by other lenders, at times relevant to this action, was

11  between 0 and 2%. Plaintiff is further informed and believes and on that basis alleges that the

12  7.5% origination fee that the defendants charged her, for a combined 15%, was excessive and

13  unaffordable.

14  35.    The Cal State Defendants and defendants Menton, Sabatino, and McLaurin, through

15  Benjamin Capital charged a combined 15% in origination fees. The Cal State Defendants charged

16  Plaintiff a 7.5% origination fee in the amount of $2,137.50. Defendants Sabatino, Menton, and

17  Benjamin Capital also charged Plaintiff a combined 7.5% origination fee in the amount of

18  $2,137.50.

19  36.    The Cal State Defendants and Benjamin Capital charged Plaintiff the maximum

20  allowable origination fee established by the Cal State Defendants. The 15% combined origination

21  fee was based in part on the future risk associated with the loan.

22  37.    The Cal State Defendants also charged Plaintiff $335 for a processing fee, $495 for a

23  document fee, and $90 for a funding fee. Defendants Sabatino, Menton, and McLaurin, through

24  Benjamin Capital also charged Plaintiff a duplicate processing fee for $495.

25

26  E.    THE DEFENDANTS MAKE A SECOND PREDATORY LOAN LESS THAN SIX
       MONTHS LATER

27

28

**Third Amended Complaint**                                                                10

38.     Less than six months later, on December 7, 2005, the defendants arranged and extended a second larger and more expensive loan to Plaintiff and her sister. The second loan closed on December 15, 2005 (December loan).

39.     Plaintiff's loan documents indicate that Defendant Sabatino completed Plaintiff's loan application for the December loan in November 2005. Plaintiff is informed and believes and on that basis alleges that Defendant Sabatino also completed the loan application for the July loan. Plaintiff is informed and believes that defendant Sabatino brokered the July and December loans.

40.     The December loan is a five-year loan in the amount of $50,000. The APR is 18.941%. The monthly payments are $549.19 and run from February 1, 2006 to January 1, 2011. The balloon payment in the amount of $49,571.16 comes due on January 1, 2011.

41.     The December loan was funded by Defendants Cal State Growth Fund and Belling. Defendant Belling set the interest rate and terms of the loan

42.     The Cal State Defendants deducted $28,742.75 to pay off the July loan, which was a pre-condition for extending the December loan. Plaintiff and her sister each received approximately $5,000 from the December loan. The balance was deducted to pay off various fees, charges and commissions.

43.     The Cal State Defendants and defendants Menton, Sabatino, and McLaurin, through Benjamin Capital again charged a combined 15% in origination fees. The Cal State Defendants charged a 7.5% origination fee in the amount of $3,750. Defendants Sabatino, Menton, and McLaurin, through Benjamin Capital also charged a combined 7.5% origination fee in the amount of $3,750.

44.     The Cal State Defendants and Defendants Sabatino, Menton, and McLaurin, through Benjamin Capital charged Plaintiff the maximum allowable origination fee established by the Cal State Defendants. The 15% combined origination fee was based in part on the future risk associated with the loan.

45.     The Cal State Defendants again charged Plaintiff a $335 processing fee, a $495 document fee, and a $90 funding fee. Defendants Sabatino, Menton, and McLaurin, through Benjamin

1    Capital also charged Plaintiff a duplicate processing fee for $495.

2

3    46.    The July and December loans were reviewed and approved by defendants Seward,

4    Gomez, and Belling.

5    47.    Plaintiff is informed and believes and on that basis alleges that the APR, fees,

6    commissions, charges, and balloon payments for the July and December loans were excessive,

7    unearned, and unaffordable.

8    48.    Each loan was arranged by Benjamin Capital, Menton, Sabatino, McLaurin, and their

9    agents, and extended by the Cal State Defendants and their agents to Plaintiff and her sister as

10   part of the defendants' actions to collect excessive and unlawful fees, charges, commissions, and

11   interest.

12   49.    Each of these mortgage loans was predatory in that they were calculated to strip equity

13   from the Turlock home and extended without regard to Plaintiff's ability to repay the loans. The

14   defendants took advantage of Plaintiff's disability and financial hardship by placing her into a

15   new, larger and more expensive mortgage, even though they knew that she lacked the financial

16   resources to repay that loan.

17

18   F.    THE COUNTY APPOINTS CONSERVATORS FOR THE HOUSE SISTERS

19   50.    The Superior Court for Stanislaus County appointed the County's Public Guardian as

20   conservator for Josephine House's estate, and a private conservator for Joan House's estate, in

21   January 2008.

22   51.    The Superior Court for Stanislaus County appointed the County's Public Guardian as

23   conservator for Josephine House's person on October 16, 2009.

24   52.    Plaintiff, due to her mental disability, did not have the capacity to consummate the July

25   and December loans when she obtained them.

26   53.    The July and December loans were not consummated until she was appointed a

27   conservator in January 2008.

28

**THIRD AMENDED COMPLAINT**                                                                    12

1

2   G.   HOUSE RESCINDS THE CAL STATE LOANS

3   54.   Plaintiff, through her counsel, on November 21, 2008, sent a timely written notice to the

4   Cal State Defendants rescinding the July and December loans. The Cal State Defendants refused

5   to rescind the loans after receiving the notice. Defendant Gomez, in response to Plaintiff's

6   rescission, sent a written reply stating that Plaintiff's loans would not be rescinded and

7   demanding that she continue making payments. The Cal State Defendants improperly failed and

8   refused to rescind the July and December loans.

9

10   H.   THE DEFENDANTS INJURED PLAINTIFF

11   55.   Plaintiff, as a proximate result of defendants' unlawful acts or practices, has suffered from

12   emotional distress and attendant bodily injury, has suffered violation of her rights, loss of dignity,

13   embarrassment and otherwise has sustained injury and harm.  Plaintiff has also suffered

14   economic losses due to the defendants' predatory lending.  Plaintiff accordingly is entitled to

15   compensatory damages.

16   56.   There now exists an actual controversy between the parties regarding the defendants'

17   duties under the federal and state lending and fair housing laws.  Plaintiff, accordingly, is entitled

18   to declaratory relief.

19   57.   Defendants, unless enjoined, will continue to engage in the unlawful acts and the pattern

20   or practice of discrimination described above.  Plaintiff has no adequate remedy at law. Plaintiff

21   is now suffering and will continue to suffer irreparable injury from the defendants' acts and their

22   pattern or practice of unlawful conduct and discrimination against persons with disabilities unless

23   relief is provided by this Court.  Plaintiff, accordingly, is entitled to injunctive relief.

24   //

25   //

26   //

27   //

28

**THIRD AMENDED COMPLAINT**                                                                    13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## V.  CLAIMS

### FIRST CLAIM
### Truth In Lending Act (TILA)
#### (As to Cal State Mortgage, Cal State Home Loans, Cal State Growth Fund, Leonette Belling, Roxanna Seward, and Alexander Gomez)

58.     Plaintiff realleges and incorporates by reference each paragraph previously alleged in this complaint.

59.     Defendants Cal State Mortgage, Cal State Home Loans, Cal State Growth Fund, Leonette Belling, Roxanna Seward, and Alexander Gomez, at all times relevant to this action, regularly extended or offered to extend consumer credit, which is subject to a finance charge or is payable by written agreement in more than four installments, and are the defendants to whom the subject transactions are initially payable. The Cal State Defendants are creditors within the meaning of the Truth in Lending Act, 15 U.S.C. § 1602(f).

60.     The July and December loans are consumer credit transactions subject to the Plaintiff's right of rescission under 15 U.S.C. § 1635 and Regulation Z § 226.23.

61.     The Cal State Defendants failed to provide Plaintiff with the notice of her right to cancel the July loan, in violation of 15 U.S.C. § 1635, entitling her to an extended right of rescission under 15 U.S.C. § 1635.

62.     The Cal State Defendants calculated the annual percentage rate for the July loan on improperly calculated and improperly disclosed finance charges and amount financed under of 15 U.S.C. § 1606, Regulation Z § 226.22. Plaintiff is informed and believes and on that basis alleges that the appraisal was a "drive by" appraisal valued at less than $100. Plaintiff is further informed and believes and on that basis alleges that the appraisal fee was not bona fide and reasonable and that to the extent that the appraisal fee was not bona fide and reasonable, it should have been included in the finance charge. The Cal State Defendants understated the disclosed annual percentage rate in violation of 15 U.S.C. § 1638 and Regulation Z § 226.18.

63.     The Cal State Defendants failed and/or refused to rescind the July and December loans after timely notice of rescission by Plaintiff on November 21, 2008. The Cal State Defendants'

failure to take the actions necessary and appropriate to reflect the termination of the security interest within 20 days after Plaintiff's rescission of the transaction violates 15 U.S.C. § 1635(b).

64. The Cal State Defendants' violations of the federal Truth in Lending Act entitles Plaintiff to actual damages, statutory damages, orders enforcing her rescission of the transactions, and other amounts or damages permissible under 15 U.S.C. §§ 1635, 1640(a).

65. The Cal State Defendants injured Plaintiff by committing unlawful practices in violation of Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* and Federal Reserve Regulation Z, 12 C.F.R. § 226 *et seq.*

**SECOND CLAIM**
**Home Ownership and Equity Protection Act (HOEPA)**
**(As to Cal State Mortgage, Cal State Home Loans, Cal State Growth Fund, Leonette Belling, Roxanna Seward, and Alexander Gomez)**

66. Plaintiff realleges and incorporates by reference each paragraph previously alleged in this complaint.

67. The Cal State Defendants are Creditors within the meaning of the Home Ownership and Equity Protection Act, 15 U.S.C.  §§ 1602(f), and 1602(aa).

68. The loans at issue in this case are high interest and high cost consumer credit transactions secured by Plaintiff's principal dwelling within the meaning of the Home Ownership and Equity Protection Act, 15 U.S.C. §§ 1602(aa)(1)(A), 1602(aa)(1)(B).

69. The loans at issue in this case are high rate mortgage loans within the meaning of, 15 U.S.C. §1602(aa)(1)(B), in that the total "points and fees" that the Cal State Defendants charged Plaintiff as defined in that section exceeded eight percent of the total loan amount and is greater than $510.

70. Each loan was extended by the Cal State Defendants, based on the equity in Plaintiff's home without regard to her ability to repay, including her current and expected income and current obligations and employment. The Cal State Defendants' lending based on Plaintiff's collateral without regard to her ability to repay violates 15 U.S.C. § 1639(h).

*//*

**THIRD AMENDED COMPLAINT**                                                                 15

71.    The July and December loans are HOEPA loans subject to additional disclosures that the Cal State Defendants failed to provide. The Cal State Defendants' failure to give Plaintiff the disclosures required by HOEPA violates 15 U.S.C. §§ 1639(a) and (b), and extends her right to rescind to three years after its consummation, under 15 U.S.C. § 1635.

72.    Regulation Z § 226.34 prohibits the refinancing of one HOEPA loan into another HOEPA loan within one year, unless the refinance is in the borrower's interest.  The July and December loans are HOEPA loans and the refinance transaction was not in Plaintiff's interest. The Cal State Defendants violated Regulation Z § 226.34 when they refinanced the July loan less than six months later in December.

73.    The Cal State Defendants structured the July and December loans as open ended plans to evade the requirements of § 226.32 in violation of Regulation Z § 226.34(b).

74.    The Cal State Defendants violations of the federal Home Ownership and Equity Protection Act entitle Plaintiff to actual damages, statutory damages, orders enforcing her rescission of the transactions, and other amounts or damages permissible under 15 U.S.C. §§ 1635, 1640(a).

75.    Each Defendant injured Plaintiff by committing unlawful practices in violation of the Home Ownership and Equity Protection Act, 15 U.S.C. §§ 1601, *et seq*., 1639 and Federal Reserve Regulation Z, 12 C.F.R. § 226 *et seq.*

**THIRD CLAIM**
**Real Estate Settlement Procedures Act (RESPA)**
**(As to All Defendants)**

76.    Plaintiff realleges and incorporates by reference each paragraph previously alleged in this complaint.

77.    The loans at issue in this case are federally related mortgage loans as defined in the Real Estate Settlement Procedures Act, 12 U.S.C. § 2602 and implemented by 24 C.F.R. § 3500, *et seq*., in that the loans are secured by a first lien on residential real property designed principally for the occupancy of one to four families, including any such secured loan, the proceeds of which

1   are used to prepay or pay off an existing loan secured by the same property; and is made in whole

2   or in part by any lender the deposits or accounts of which are insured by any agency of the

3   Federal Government, or is made in whole or in party by any lender which is regulated by any

4   agency of the Federal Government; or is intended to be sold by the originating lender to the

5   Federal National Mortgage Association, the Government National Mortgage Association, the

6   Federal Home Loan Mortgage Corporation, or a financial institution from it is to be purchased by

7   the Federal Home Loan Mortgage Corporation; or is made in whole or in part by any "creditor,"

8   as defined in 15 U.S.C. § 1602(f), who makes or invests in residential real estate loans

9   aggregating in more than 1 million dollars per year.

10   78.   RESPA prohibits a person from giving or accepting any part of a charge for services that

11   re not performed.

12   79.   Plaintiff is informed and believes and on that basis alleges that Defendants Benjamin

13   Capital, Sabatino, Menton, Mclaurin, and the Cal State Defendants did not perform services to

14   justify the taking of the 7.5% origination fee. The 7.5% origination fees were excessive and

15   unearned.

16   80.   The 7.5% origination fee charged by the Cal State Defendants were based partly on the

17   future risk associated with the loan. To the extent that the fees were based on a future risk they

18   are unearned and, therefore, in violation of the RESPA, 12 U.S.C. § 2607(b).

19   81.   Each defendant charged Plaintiff a 7.5% origination fee for services that were not

20   performed in violation the RESPA, 12 U.S.C. § 2607(b).

21   82.   Plaintiff is informed and believes and on that basis alleges that the 7.5% origination fees

22   were disguised kickbacks by the Cal State Defendants to Defendants Menton, Sabatino,

23   Mclaurin, and Benjamin Capital for referring clients to them. Each defendant gave and accepted

24   compensation for client referrals in violation of the RESPA, 12 U.S.C. § 2607(a).

25   83.   Plaintiff is informed and believes and on that basis alleges that the $335 processing fee,

26   $495 document fee and $90 funding fee that the Cal State Defendants charged for the July and

27   December loans should have been included in the high 7.5% origination fee. The Cal State

28

**Third Amended Complaint**                                                     17

1    Defendants did not perform any additional services that would justify these fees, therefore, they

2    are unearned and violate the RESPA, 12 U.S.C. § 2607(b).

3    84.    Plaintiff is informed and believes that the duplicate $495 processing fee charged by

4    Defendants Menton, Sabatino, McLaurin, and Benjamin Capital should have been included in the

5    high 7.5% origination fee.  Defendants Menton, Sabatino, McLaurin, and Benjamin Capital did

6    not perform any additional services that would justify these fees, therefore, they are unearned and

7    violate the RESPA, 12 U.S.C. § 2607(b).

8    85.    Plaintiff is informed and believes and on that basis alleges that the duplicate $495 process

9    fee charged by Defendants Menton, Sabatino, McLaurin, and Benjamin Capital was a disguised

10   kickback for client referrals. The Cal State Defendants violated the RESPA, 12 U.S.C. § 2607(a)

11   by providing a $495 kickback to Defendants Menton, Sabatino, McLaurin, and Benjamin Capital

12   for the July and December loans. Defendants Menton, Sabatino, McLaurin, and Benjamin Capital

13   violated the RESPA, 12 U.S.C. § 2607(a)  by accepting a $495 kickback from the Cal State

14   Defendants for the July and December loans.

15   86.    Plaintiff is entitled to recover from Defendants Menton, Sabatino, McLaurin, and

16   Benjamin Capital, and the Cal State Defendants, an amount equal to three times the amount of

17   any and all charges for "settlement services" paid directly or indirectly by Plaintiff, as well as

18   actual damages, court costs, attorney fees and other amounts or damages permissible under

19   RESPA, 12 U.S.C. § 2607(d).

20   87.    Each defendant injured Plaintiff by giving and/or receiving kickbacks and unearned fees

21   in violation of Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq*., and Federal

22   Reserve Regulation X, 24 C.F.R. § 3500 *et seq.*

23

24                           **FOURTH CLAIM**
                        **Fair Housing Act (FHA)**
25                       **(As to All Defendants)**

26   88.    Plaintiff realleges and incorporates by reference each paragraph previously alleged in this

27   complaint.

28

**THIRD AMENDED COMPLAINT**                                                    18

1    89.    Plaintiff's Turlock home is a dwelling within the meaning of the federal Fair Housing

2    Act, 42 U.S.C. § 3602(b).

3    90.    Plaintiff is a member of a protected class in that she has a record of physical and mental

4    impairments that substantially limit one or more of her major life activities. Plaintiff is

5    handicapped within the meaning of the federal Fair Housing Act, 42 U.S.C. § 3602(h). Plaintiff

6    is an aggrieved person within the meaning of the federal Fair Housing Act, 42 U.S.C. § 3602(i),

7    in that she has been injured by the discriminatory housing practices of the defendants based on

8    her protected class status.

9    91.    Each defendant, personally and through their authorized agents and representatives, have

10   violated 42 U.S.C. §§ 3604 and 3605 and their implementing regulations, by arranging and/or

11   extending two predatory loans that Plaintiff could not afford to repay with high interest rates,

12   closing costs, fees and commissions because of Plaintiff's disability.

13   92.    Each defendant, at times relevant to this action, engaged in the business of resident real

14   estate related transactions, and discriminated in the terms and conditions of the loans at issue in

15   this action, because of Plaintiff's disability in violation of the federal Fair Housing Act, 42

16   U.S.C. §§ 3604(f)(2), 3605.

17   93.    The Cal State Defendants engaged in residential real estate-related transaction as defined

18   by the federal Fair Housing Act, 42 U.S.C. § 3605(b)(1) by making loans secured by residential

19   real estate in July and December.

20   94.    Defendants Benjamin Capital, Menton, and Sabatino engaged in residential real estate-

21   related transactions as defined by the federal Fair Housing Act, 42 U.S.C. § 3605(b)(2) in that

22   they brokered the July and December loans.

23   95.    Plaintiff is informed and believes and on that basis alleges, that the defendants

24   discriminated against her on the basis of her mental disability, in the terms and conditions of the

25   loans. Specifically, the terms and conditions offered to Plaintiff were significantly less favorable

26   than those offered by the defendants to borrowers who are not better qualified than Plaintiff, but

27   who are not mentally disabled.

28

**THIRD AMENDED COMPLAINT**                                                                    19

96.     The loans made by the defendants to Plaintiff were on grossly unfavorable terms, as set forth above. The Defendants knew or should have known of Plaintiff's mental disabilities and her inability to understand the terms of the loans, and made the grossly unfavorable loans to her because her disability made her unable to understand the terms of the loans. The defendants took advantage of Plaintiff by offering and providing her with unfair loan terms because of her disability.

97.     Plaintiff is informed and believes and on that basis alleges that the defendants made loans to similarly situated persons without disabilities on terms and conditions more favorable. For example, although the apparently standard commission agreement between the defendants was 6% based on a loan document indicating that amount, at closing the defendants charged Plaintiff a higher 7.5% commission, taking advantage of her inability to understand the terms of the loan as a result of her disabilities. Plaintiff is informed and believes and on that basis alleges that the defendants would not have increased their commissions above the standard rate had Plaintiff not been mentally disabled and unable to understand the terms and conditions of the loans.

98.     Each defendant injured Plaintiff by committing discriminatory housing practices in violation of the federal Fair Housing Act, 42 U.S.C. § 3601, *et seq.,* and its implementing regulations 24 C.F.R. § 100.5, *et seq.*


**FIFTH CLAIM**
**California Fair Employment and Housing Act (FEHA)**
**(As to All Defendants)**

99.     Plaintiff realleges and incorporates by reference each paragraph previously alleged in this complaint.

100.    Plaintiff's Turlock home is a housing accommodation within the meaning of the California Fair Employment and Housing Act (FEHA), Government Code § 12927(d).

101.    Plaintiff is disabled within the meaning of California Fair Employment and Housing Act (FEHA), Government Code § 12955.3, in that she has a mental or psychological disorder or condition that limits a major life activity, as defined in Subdivision 12926(i). Plaintiff is an

1  aggrieved person under Subdivision 12927(g) in that she has been injured by the discriminatory

2  housing practices of the defendants.

3  102.    The Cal State Defendants, at times relevant to this action, engaged in real estate-related

4  transaction as defined by Subsection 12927(h)(1), by making the July and December loans which

5  are secured by residential real estate.

6  103.    Defendants Benjamin Capital, Menton, and Sabatino, at times relevant to this action,

7  engaged in real estate-related transactions as defined by Subsection 12927(h)(2) in that they

8  brokered the July and December loans.

9  104.    Each defendant was involved in real estate related transactions, at times relevant to this

10  action, and discriminated in the terms and conditions of the loans based on Plaintiff's disability

11  in violation of Subdivision 12955(i).

12  105.    Plaintiff is informed and believes and on that basis alleges, that the defendants

13  discriminated against her on the basis of her mental disability, in the terms and conditions of the

14  loans. Specifically, the terms and conditions offered to Plaintiff were significantly less favorable

15  than those offered by the defendants to borrowers who are not better qualified than Plaintiff but

16  who are not mentally disabled.

17  106.    The loans made by the defendants to Plaintiff were on grossly unfavorable terms, as set

18  forth above. The Defendants knew or should have known of Plaintiff's mental disabilities and

19  her inability to understand the terms of the loans, and made the grossly unfavorable loans to her

20  because her disability made her unable to understand the terms of the loans. The defendants took

21  advantage of Plaintiff by offering and providing her with unfair loan terms because of her

22  disability.

23  107.    Plaintiff is informed and believes and on that basis alleges that the defendants made loans

24  to similarly situated persons without disabilities on terms and conditions more favorable. For

25  example, although the apparently standard commission agreement between the defendants was

26  6% based on a loan document indicating that amount, at closing the defendants charged Plaintiff

27  a higher 7.5% commission, taking advantage of her inability to understand the terms of the loan

28

as a result of her disabilities. Plaintiff is informed and believes and on that basis alleges that the defendants would not have increased their commissions above the standard rate had Plaintiff not been mentally disabled and unable to understand the terms and conditions of the loans.

108.    Defendants injured Plaintiff by committing discriminatory housing practices in violation of the California Fair Employment and Housing Act, California Government Code § 12955, *et seq.*

### SIXTH CLAIM
### California Covered Loans Law
### (As to All Defendants)

109.    Plaintiff realleges and incorporates by reference each paragraph previously alleged in this complaint.

110.    The July and December loans are covered loans as defined by California Financial Code §§ 4970(b) and (c), in that the original principal balance of the loans did not exceed the conforming loan limit of $359,650 established by the Federal National Mortgage Association for 2005 and the total "points and fees," as defined by that section, exceeded six percent of the loan amount at or before closing.

111.    Each defendant originated the covered loans at issue in this case in that they arranged, negotiated or made a consumer loan to Plaintiff within the meaning of California Financial Code § 4970(h).

112.    Each defendant originated the covered loans at issue in this case, based on Plaintiff's equity in her home and without regard to her ability to repay the loans, including her current and expected income and current obligations and employment in violation of Subdivision 4973(f)(1) of the California Financial Code.

113.    Each defendant attempted to avoid the requirements of California's Covered loans laws by structuring each loan as an open line of credit in violation of Subdivision 4973(m) of the California Financial Code.

114.    Each defendants failed to provide Plaintiff with the disclosures required for the covered

1   loans at issue in this case, in violation of Subsection 4973(k)(1) of the California Financial Code.

2   115.    Each defendant originated covered loans that financed points and fees in excess of six

3   percent of the original principal balance in violation of subsection 4979.6 of the California

4   Financial Code.

5   116.    California Financial Code section 4975.5 imposes on persons who provide brokerage

6   services for covered loans a fiduciary duty to the borrower. Defendants Sabatino, Menton, and

7   Benjamin Capital owed Plaintiff a fiduciary duty pursuant to this section and their breach of

8   fiduciary duty violate section 4979.5.

9   117.    Each defendant injured Plaintiff by committing unlawful practices in violation of the

10   California Covered Loans law, California Financial Code § 4970, *et seq.*

11

12                            **SEVENTH CLAIM**
                               **Fiduciary Duty**
13   **(As to Benjamin Capital, Sabatino, McLaurin, and Menton)**

14   118.    Plaintiff realleges and incorporates by reference each paragraph previously alleged in this

15   complaint.

16   119.    California law imposes on real estate agents, as fiduciaries, the same obligation of

17   undivided service and loyalty that it imposes on a trustee in favor of a beneficiary.

18   120.    Pursuant to California Financial Code section 4975.5, Defendants Sabatino, Menton,

19   McLaurin and Benjamin Capital owed Plaintiff a fiduciary duty.

20   121.    Defendants Benjamin Capital, Sabatino, McLaurin, and Menton owed Plaintiff a duty of

21   utmost loyalty, good faith and diligence and breached those duties by failing to explain the terms

22   of the loan transactions to Plaintiff, placing Plaintiff in a loan that is more financially

23   burdensome than her original loan, failing to provide disclosures required by law, and violating

24   California's covered loans laws.

25   122.    The defendants failed to act diligently by failing to evaluate Plaintiff's ability to repay the

26   loans, failing to disclose all material terms of the transactions, and failing to comply with

27   applicable consumer protections intended to benefit Plaintiff.

28

**THIRD AMENDED COMPLAINT**                                                        23

123.    The defendants engaged in the conduct alleged for the purpose of advancing their own financial interest and in disregard to the foreseeable financial consequences to Plaintiff.

124.    Defendants Benjamin Capital, Sabatino, McLaurin and Menton in doing the acts of which Plaintiff complains, acted with knowledge, intent, oppression, fraud and malice, and with wanton and conscious or reckless disregard of Plaintiff's federally and state protected rights. Plaintiff, accordingly, is entitled to punitive damages.

125.    As a result of the defendants' breach of their fiduciary duties to Plaintiff, Plaintiff has been injured. The defendants' breach of their fiduciary duty was a substantial factor in causing damages sustained by Plaintiff.

**EIGHTH CLAIM**
**Financial Abuse of a Dependent Adult**
**(As to All Defendants)**

126.    Plaintiff realleges and incorporates by reference each paragraph previously alleged in this complaint.

127.    Plaintiff resides in California and due to her mental illness she is restricted in her ability to carry out normal activities and to protect her rights. Plaintiff, at all times relevant to this action, is and was a dependent adult within the meaning of California's Welfare and Institutions Code § 15610.23(a).

128.    Each defendant was aware or should have been aware that Plaintiff was under the custody and care of Turlock Behavioral Health and Recovery Services at the time of the July and December loan transactions and that she suffered from mental illnesses that restricted her ability to carry out normal activities or to protect her rights. Each defendant knew or should have known that the loans were not in Plaintiff's best interest and that she did not understand the terms and conditions of the July and December loans.

129.    Each defendant knew or should have known that the loans were unaffordable and expensive and that Plaintiff and her sister could not afford to repay the balloon payments at the end of the five-year term for $28,379.441 and $49,571.16, respectively.

**THIRD AMENDED COMPLAINT**                                                                 24

130.    Each defendant charged excessive fees, interest, charges, and commissions for the July loan. The defendants collected additional excessive fees, interest, charges, and commissions by refinancing the July loan less than six months later in December and placing Plaintiff into a larger and more expensive loan.

131.    Each defendant knew that the loans ultimately would deprive Plaintiff and her sister of their home and strip them of the equity in it. Each defendant knew or should have known that their conduct was likely to be harmful to Plaintiff, a dependent adult.

132.    The defendants, as part of each loan transaction took, secreted, appropriated, obtained or retained or assisted in taking, secreting, appropriating, obtaining or retaining real or personal property of a dependent adult for a wrongful use or with intent to defraud, or both.

133.    The defendants, as part of each loan transaction took, secreted, appropriated, obtained or retained or assisted in taking, secreting, appropriating, obtaining or retaining real or personal property of a dependent adult by undue influence as defined by section 1575 of the Civil Code.

134.    Each defendant in doing the acts of which Plaintiff complains, acted with knowledge, intent, oppression, fraud and malice, and with wanton and conscious or reckless disregard of the federally and state protected rights of Plaintiff.  Plaintiff, accordingly, is entitled to punitive damages.

135.    The defendants' financial abuse of a Plaintiff entitles her to compensatory damages, reasonable attorney's fees and costs, and all other remedies otherwise provided by law, under the Welfare and Institution Code § 15657.5.

136.    Each defendant injured Plaintiff, a dependent person, in violation of Welfare and Institution Code §§ 15610 *et seq*., 15610.07, 15610.30

**NINTH CLAIM**
**Fraud**
**(As to the Cal State Defendants)**

137.    Plaintiff realleges and incorporates by reference Paragraphs 4-5, 26-30, 33-41,  46-48, 59, and 99.

1    138.    Defendants Cal State Mortgage, Cal State Home Loans, Cal State Growth Fund, Belling,

2    Seward, and Gomez on or about July 1, 2005 and on or about December 15, 2005,

3    misrepresented to Plaintiff through the written loan agreements that the loans were open lines of

4    credit. The loans were extended by Cal State Mortgage and Cal State Home Loans and their

5    agents and representatives and approved by Gomez.

6    139.    The loans were not open lines of credit because there was no expectation of repeated

7    transactions from the lines of credit. The Cal State Defendants knew at the time of the

8    misrepresentations that the loans were not open lines of credit, but in fact high cost, closed ended

9    loans subject to protections under the HOEPA and state Covered Loan Laws.  The Cal State

10   Defendants intended to deceive Plaintiff by the misrepresentation.

11   140.    The Cal State Defendants misrepresented the loan as open ended through the written loan

12   agreements in order to avoid the disclosure requirements and protections available to Plaintiff

13   under HOEPA and the California Financial Code, which prohibits lending without regard to a

14   borrower's ability to repay.

15   141.    The misrepresentation of the loan products to Plaintiff occurred on or about June 27,

16   2005 and July 1, 2005 and on or about December 7, 2005 and December 15, 2005 by the Cal

17   State Defendants and their agents and representatives.

18   142.    Defendant Gomez approved the misrepresentation of the loans as open lines of credit for

19   the July and December loans on or about June 27, 2005 and July 1, 2005 and on or about

20   December 7, 2005 and December 15, 2005.

21   143.    The misrepresentation took place in the Cal State Defendants' offices and where Plaintiff

22   and her sister signed the loan documents.

23   144.    Plaintiff did not know of the falsity of the Cal State Defendants' misrepresentation and

24   reasonably relied on them.

25   145.    Plaintiff did not discover the fraud until after she was appointed a conservator in January

26   2008. Plaintiff, due to her mental illness, was unable to discover the fraud earlier. Plaintiff,

27   furthermore, trusted and relied on the defendants in entering the July loan and continued to

28

**THIRD AMENDED COMPLAINT**                                                                 26

1   transact business with them again in December.

2   146.    Plaintiff did not discover the fraud, and had no reason to know of the facts or

3   circumstances constituting the fraud until she had someone help her review the loans. Plaintiff, at

4   the time she entered into the loan agreements, did not understand the terms and conditions of the

5   loans. Plaintiff was not aware at the time she entered into the loan that there was a balloon

6   payment and that the loan must be repaid within five years.

7   147.    Plaintiff has sustained damages as a proximate result of her reasonable reliance on the Cal

8   State Defendants' misrepresentation, in an amount to be proven at trial.

9   148.    The Cal State Defendants, in doing the acts of which Plaintiff complains, acted with

10  knowledge, intent, oppression, fraud and malice, and with wanton and conscious or reckless

11  disregard of the federally and state protected rights of Plaintiff.  Plaintiff, accordingly, is entitled

12  to punitive damages.

13  149.    Each Defendant injured plaintiff by committing fraud against her, a disabled person.

**TENTH CLAIM**
**Unfair Business Practices**
**(As to All Defendants)**

150.    Plaintiff realleges and incorporates by reference each paragraph previously alleged in this

complaint.

151.    Each defendant, in acting as alleged, injured Plaintiff by engaging in a pattern or practice

of unlawful conduct in violation of California Business and Professions Code § 17200.

152.    Plaintiff is entitled to restitution of amounts illegally collected and losses and

expenditures resulting from the defendants' unfair practices prohibited by § 17200.

153.    Plaintiff is entitled to an injunction against the continued unlawful practices of the

defendants.

## VI.   RELIEF

Wherefore, Plaintiff prays for entry of a judgment against the defendants that:

1.      Awards compensatory, statutory and punitive damages, according to proof;

2.      Enforces the rescission of the July and December loans;

**THIRD AMENDED COMPLAINT**                                                                27

1    3.    Declares that Defendants have violated the provisions of the applicable federal

2          and state laws;

3    4.    Enjoins all unlawful practices complained about and imposes affirmative

4          injunctive relief requiring Defendants, their partners, agents, employees,

5          assignees, and all persons acting in concert or participating with them, to take

6          affirmative action to address the effect of their unlawful and discriminatory

7          conduct;

8    5.    Awards up to three times the amount of actual damages to Plaintiff against each

9          defendant pursuant to Civil Code § 3345;

10   6.    Awards reasonable attorneys' fees to Housing and Economics Rights Advocates

11         and Brancart & Brancart only;

12   7.    Awards costs of this action; and,

13   8.    Awards all such other relief as the Court deems just.

14

15   Dated: December, 7 2009          CALIFORNIA RURAL LEGAL ASSISTANCE, INC.

16                                    /s/   *Austa Wakily*
                                      Austa Wakily (SBN 257424)
17                                    Attorney for Plaintiff, JOSEPHINE HOUSE, by her
                                      guardian ad litem, PUBLIC GUARDIAN OF
18                                    STANISLAUS COUNTY

19

20

21

22

23

24

25

26

27

28

**THIRD AMENDED COMPLAINT**                                                          28